# EXHIBIT 1

## EMPLOYMENT AGREEMENT

This Employment Agreement ("Agreement"), dated **February 8th, 2021** is entered into by and between StoneX Group Inc., together with its affiliates, successors and assigns, including but not limited to StoneX Financial Inc., StoneX Markets LLC, and FCStone Merchant Services, LLC (the "Employer'" and/or "Company") and **Howard Shipman** (the "Employee").

1) **Employment.** Employee accepts full time employment as a **Managing Director – Principal Equities Development** in our **New York, NY** office reporting to **Thomas Moore, Managing Director - Head of Equity Trading.**

   Upon the commencement of Employee's employment with Company, Employee will receive a salary of ▮▮▮▮▮ per year, according to the standard payroll practices of the Company, which currently calls for semi-monthly payments. Employee will receive a minimum bonus ▮▮▮▮▮ less taxes, to be paid out at the end of each quarter in four (4) installments of ▮▮▮▮▮ over your first year of employment, based on continued employment with the Company. Employee will also be eligible for participation in the division's bonus pool as determined by the Company.

   Your benefits will be effective the 1st of the month following your date of hire.

   Employee must successfully pass the SIE Exam, Series 7 Top Off Exam, and Series 57 Exam within the first 12 months of employment. If the Employee fails to satisfy this condition, Employee's employment may be terminated without entitlement to any accrued Bonus and/or variable compensation.

   Employee accepts full-time employment, upon the terms and conditions of this Agreement. The agreements contained herein are in consideration of Employee's employment and continued employment. The Company reserves the right to adjust Employee's draw, commissions, and/or bonus upon the expiration of any guarantees contained herein.

2) **Employment at Will.** The employment of Employee shall be "at will," and thus the employment and compensation provided by this Agreement may be terminated at any time, with or without prior notice, and with or without cause by either Employer or Employee.

3) **Scope of Service.** Employee shall devote Employee's entire time, attention and energies to Employer's business and shall not during the term of this Agreement be engaged in any other business activity whether or not such business activity is pursued for gain, profit or other pecuniary advantage. However, Employee may invest assets in such form or manner as will not require services in the operation of the affairs of the companies in which such investments are made.

4) **Compliance with Laws, Regulations and Policies.** Employee shall at all times perform Employee's duties faithfully and diligently and in compliance with all applicable laws, regulations, Employer written policies, and manuals provided to Employee, and any direction from Employer or from Employer's governing Board. Such compliance with laws and regulations shall include, but not be limited to, compliance with the Commodity Exchange Act, the rules and regulations of the Commodity Futures Trading Commission, the rules and regulations of all exchanges and clearing corporations on which Employer transacts business. Employee also shall comply with all Employer and the Company's policies respecting ethics,

trading in StoneX Group Inc. stock, and all applicable rules and regulations of the Securities and Exchange Commission. Employee shall become familiar with and shall abide by the terms of Employer's Policies, Procedures, and or Compliance Manual (collectively "Manual"). Any disclosure or dissemination of the manual to outside persons is strictly prohibited. The provisions of the Manual are intended to advance Employer's compliance with applicable laws, regulation and other requirements and also to reduce and control financial and other risks. No separation of these functions is expressed in the Manual. Nothing contained in the Manual is intended as a statement of obligations to customers or other third parties, and no customer or other third party shall be entitled to rely upon its provisions.

a) <u>Employee's Disclosure and Compliance with Any Existing Restrictive Covenants.</u>

Employee represents and warrants that he/she has disclosed to Company any restrictions on his/her ability to comply the full Scope of Services required by their employment and this Agreement. For the avoidance of any doubt, this includes, but is not limited to, any agreement: not to compete, not to solicit former customers or employees, and/or any confidentiality agreements from any prior employer or independent contractor relationship.

b) <u>Employer's Position Regarding any Third-Party Confidential Information.</u>

If Employee is in possession of any confidential, proprietary, or trade-secret information of any prior employer or any independent contractor relationship, Employee is explicitly directed **not** to share any such information with the Company.

5) **Not Used.**

6) **Confidential Information and Client Relationships.** Employee acknowledges and agrees (a) that the Company's trade secrets, business strategies, and other commercially sensitive information (collectively, the "Confidential Information," as defined below) are, along with its people, its most valued assets and are critical to its ability to compete in an increasingly competitive global economy; (b) that the Company has exposed and will continue to expose Employee to its Confidential Information and to its customers and its customers' confidential information; (c) that such exposure will provide Employee with knowledge of the Company's operations and strategic direction; and (d) that the Company has invested substantial resources in the development of its business and its relationships with customers and will continue to do in the future. Given this knowledge, Employee acknowledges and agrees that any Employee failure to abide by the obligations set forth in Sections 6 and 7 would cause the Company to suffer irreparable harm while benefiting Employee. Employee further acknowledges and agrees that each of the provisions in Sections 6 and 7 are fair and reasonable in scope and duration and constitute a key component of, and consideration for, this Agreement.

7) **Employment and Post Termination Restrictions.**

<u>7.1 Non-Competition and Non-Solicitation.</u>

i) Employee acknowledges and agrees that the resources, training, goodwill and reputation of Employer are the primary and material factors in Employee's ability to develop and service Employer's customers, and all customers serviced by Employee on behalf of Employer are customers of Employer. Employee further acknowledges

and agrees that he/she will not engage in **Competition** with, and will not **Solicit** from, the Company (as defined herein below), without the Company's **express written consent**, during the period of his employment with the Company and for a period of three (3) months following Employee's termination or resignation from the Company for any reason, without any additional consideration beyond that provided by this Agreement.

ii) **NOT USED**

iii) For purposes of this Agreement:

> "**Competition**" shall mean doing any of the activities defined in this paragraph at 7.1.iii.(1)-(4) either directly or indirectly, either for him/herself or any other person, firm, corporation or other form of business entity.
>
> "**Solicit**" shall mean doing any of the activities defined in this paragraph at 7.1.iii.(1)-(2) either directly or indirectly, either for him/herself or any other person, firm, corporation or other form of business entity:

(1) Recruit or hire any employee of the Company or otherwise attempt to solicit or induce any employee to leave the employment of the Company or interfere in any way with the Company's business relationship with any vendor, independent contractor or other party with whom the Company engages in business.

(2) Call, solicit, take away, sell services to, canvass, or interfere with any former or current customer of the Company with whom Employee had contact in his capacity as an Employee of the Company, where the purpose of such contact with the former, current or prospective customer may be to, directly or indirectly, have that entity choose not to do business with the Company, cease to do business with the Company, or do business with a person or entity that competes with the Company. This definition also applies to prospective customers of the Company whose status as a prospective customer became known to Employee during his/her employment with the Company.

(3) During any period in which Employee serves as an employee of the Company, (i) perform or attempt to perform, for himself or any other entity, the types of services that Employee is engaged to provide to the Company, (ii) assist any other Person to do any of the activities described in clause (iii) of this sentence, except in each such case for activities engaged in for the sole benefit of the Company and explicitly authorized by the Company.

(4) Employee shall not (i) own, manage, operate, or control any Restricted Business, whether as an officer, director, employee, partner, consultant or advisor; or (ii) be employed (or retained as a consultant, advisor or independent contractor) by a Restricted Business to provide Restricted Services or provide training or assistance to others to provide Restricted Services. For purposes of this Agreement, "Restricted Business" shall mean any business (or business unit, division or segment of a business) that provides to its customers services that are similar to the services provided by the Company at the time of termination of Employee's employment. Restricted Services means the same type of services that Employee is engaged to provide, or has at any time provided, to the Company.

**7.2 Geographical Scope of Restriction.** Employee acknowledges that the restrictions set forth above apply nationwide in the United States. Employee further acknowledges that the Company's business reaches nationwide and it would be impossible to craft a non-competition provision with a narrower geographical limitation that would adequately protect the Company's legitimate interests. The Company does not operate as a traditional "bricks and mortar" business with operations in a limited geographic area. Rather, the Company's business is such that personal long-term relationships between a customer and the Company develop through contacts with individual employees and are crucial to its business, and business is primarily conducted by telephone or electronic communications that can be conducted from anywhere.

**7.3 Confidentiality Obligations.** Employee acknowledges and agrees that he/she will have access to Confidential Information that is not available to the public and is of critical importance and value to the Company. He or she agrees that all such Confidential Information is owned by the Corporation and shall be held in trust and solely for the benefit of the Corporation both during and after his or her employment.

   i) Employee agrees that he/she will not (i) use Confidential Information at any time during or after his or her employment with the Company for his or her own personal gain or advantage, the gain or advantage of others, or to the Company's detriment; or (ii) disclose Confidential Information to any third party except as necessary for the performance of Employee's services for the Company.

   ii) In the event Employee's employment with the Company terminates for any reason, Employee agrees to deliver immediately to the Company all copies of materials of any nature containing any Confidential Information or otherwise regarding the Company or any customer of the Company, and Employee agrees not to take with him/her any such materials or reproductions thereof.

   iii) For purposes of this Agreement, Confidential Information includes, but is not limited to, knowledge, information, documents or materials or data of the following types:

   (1) Business information such as, but not limited to:

   a. Open securities, commodities, fixed-income, or other investment-related positions held by the Company.

   b. Intellectual Property (as defined below in Section 8).

   c. Company proprietary materials such as training programs and related materials, the details of the operations of the Company including compliance operations and employee manuals and procedures, computer programs and data, and internally generated forms.

   d. The identity and account information of former, current or potential customers or clients, as well as other information and records relating to such former, current or potential customers or clients.

   f. Personnel information including, without limitation, salaries, duties, qualifications, performance levels, and terms of compensation of other employees.

   g. The development and use of certain systems, methods and processes which the Company has not made public.

  (2) Technical information such as, but not limited to, technologies, know how, methods, formulae, composition, processes, procedures, discoveries, machines, inventions, computer programs, computer software, compilations of industry information, databases, and similar items or research projects.

  (3) Information pertaining to the Company's future plans and future developments such as, but not limited to, research and development or future marketing or merchandising.

  (4) Information which, if known, would be advantage to others competing with or doing business with the Company or any of its customers or potential customers, or would be of disadvantage to the Company to the Company or any of its customers, whether or not subject to patent, trademark, or trade secret protection.

**7.4 Consideration.** Employee acknowledges and agrees that the salary and benefits provided to him under this Agreement constitute sufficient and valuable consideration in support of the restrictions and obligations set forth in this Section 7.

**7.5 Enforcement.**

 (a) Employee acknowledges and agrees that the restrictions and covenants set forth in this Section 7 are material and critically important provisions of this Agreement. Employee further recognizes (i) that these restrictions and covenants are reasonable and necessary to protect the legitimate business and property interests of the Company; and (ii) that any violation of these restrictions and covenants will cause the Company substantial and irreparable injury.

 (b) Employee acknowledges and agrees that, in the event of a breach or threatened breach of any provision of this Section 7, the Company shall be entitled, in addition to any other remedies, at law or in equity, to specific performance as well as to preliminary and permanent injunctive relief, without the necessity of proving actual damages.

 (c) If a court of competent jurisdiction declares that any term or provision of this Section 7 is invalid or unenforceable as written, Employee acknowledges and agrees that the court making the determination of invalidity or unenforceability shall have the power as to Employee to reform the scope, duration, or area of the term or provision, to delete specific words or phrases, or to replace any invalid or unenforceable term or provision with a term or provision that is valid and enforceable and that comes closest to expressing the intention of the invalid or unenforceable term or provision as expressed in this Agreement. This Section 7 shall then be enforceable as to Employee as so modified.

8. **Intellectual Property.**

    8.1 Assignment/Works for Hire. I hereby assign and agree to assign to the Company all right, title, and interest in any and all ideas, inventions (whether or not patentable), trade secrets, discoveries, developments, designs, business methods, models, methodologies, techniques, improvements, plans, works of authorship, computer software, studies, reports, data, information, enhancements, or other work product (collectively, Intellectual Property"), whether tangible or intangible, that are in whole or in part conceived, made, developed, reduced to practice, prepared, or otherwise created (whether alone or in cooperation with others) within the scope of my employment. In addition, I hereby acknowledge that all original works of authorship that are made by me (solely or jointly with others) within the scope of my employment and that are protectable by copyright are "works made for hire," pursuant to the United States Copyright Act (17 U.S.C., Section 101). I further understand that the "scope of my employment" for purposes of this Paragraph is not limited to work performed during normal business hours, but also includes work performed outside my normal hours of employment that is related to, connected with, or arising out of the businesses or activities of the Company.

    8.2 Cooperation. I agree to promptly notify the Company of all information relating to the creation, modification, or improvement of any Intellectual Property. I also agree, upon reasonable notice and at the Company's expense during and subsequent to the term of my employment, to assist Company to secure and protect Company's rights, title, and interests in and to the Intellectual Property, including without limitation, the execution of such documents as may be necessary to seek copyright, patent, or trademark protection in connection herewith.

9. **Expenses.** Subject to the terms of the Company's Travel and Entertainment Policy, Employee may incur reasonable expenses for promoting Employer's business, including expenses for entertainment, travel and similar items. Subject to the tax laws, Employer will reimburse Employee for all such reasonable expenses upon Employee's periodic presentation of an itemized account of such expenditures, with substantiation in accordance with Employer's regular policies.

10. **PTO/SRTO.** PTO/SRTO of salaried Employees shall be governed by Employer's regular policies for such Employees.

11. **Notices.** Any notice required or desired to be given under this Agreement shall be deemed given if in writing and sent by mail to Employee's residence in the case of Employee, or to its Human Resources office located at StoneX – Human Resources, 1251 NW Briarcliff Pkwy, Kansas City, MO 64116 in the case of Employer.

12. **Modification, Waiver, and Severability.** No provision of this Agreement may be amended or modified unless such amendment or modification is agreed to in writing and signed by all parties. Should any provision of this Agreement be held by a court of competent jurisdiction to be enforceable only if modified, or if any portion of this Agreement shall be held as unenforceable and thus stricken, such holding shall not affect the validity of the remainder of this Agreement, the balance of which shall continue to be binding upon the Parties with any such modification to become a part hereof and treated as

though originally set forth in this Agreement. The Parties further agree that any such court is expressly authorized to modify any such unenforceable provision of this Agreement in lieu of severing such unenforceable provision from this Agreement in its entirety. No waiver by either of the Parties of any breach by the other party hereto of any condition or provision of this Agreement shall be deemed a waiver of any similar or dissimilar provision or condition, nor shall the failure of or delay by either of the Parties in exercising any right, power or privilege hereunder operate as a waiver thereof to preclude any other or further exercise of any other such right, power or privilege.

13. **Assignment.** Employee acknowledges that the services to be rendered by Employee are unique and personal. Accordingly, Employee may not assign any of Employee's rights or delegate any of Employee's duties or obligations under this Agreement. The rights and obligations of Employer under this Agreement shall inure to the benefit of and shall be binding upon the successors and assigns of Employer.

14. **Choice of Law and Exclusive Jurisdiction.** This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York, without reference to principles of conflict of laws. The parties each hereby irrevocably consent to the jurisdiction of the state and federal courts located in the Borough of Manhattan, New York City, New York for all purposes in connection with any action or proceeding which arises out of or relates to this Agreement and agree that any such action or proceeding shall be brought only in such courts.

15. **Entire Agreement.** This Agreement contains the entire understanding of the parties and supersedes any and all prior and contemporaneous agreements, whether written or oral. Except as expressly provided herein it may be changed only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification, extension or discharge is sought.

StoneX Group Inc. (Employer)

By: *Anne J. Johnson*

Printed Name: Anne L. Johnson

Dated: 04/09/2021

**EMPLOYEE**

Signature: *[signature]*

Printed Name: Howard Shipman

Dated: Feb 26, 2021