Howard Shipman<br>
15 Tudor Ln.<br>
Trumbull, CT 06611<br>
jovejava@yahoo.com<br>
(203)536-9534

**June 1, 2023**

Hon. Valerie Figueredo
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re: **StoneX Group Inc., et. al. v. Howard Shipman (23-CV-613(JGK)(VF))**

Dear Hon. Judge Figueredo:

I am writing in response to the Court's instruction to obtain counsel by June 2, 2023. I was unprepared for the recent withdrawal of my counsel, and since then, I have been unable to obtain new counsel. Most attorneys were unavailable through Memorial Day weekend, and many could not schedule a consultation until next week.

I am at a disadvantage to defend myself without sufficient time to retain counsel. For this reason, and for the reasons explained below, I respectfully request a stay of the litigation for 30 days, or until I retain new counsel; whichever date comes sooner, while the status quo of the action is maintained.

When my former counsel, Ms. Peters-Hamlin submitted a motion to withdraw, a conference was held by the Court on February 13, 2023. At that conference, Judge Koetl asked me directly if I was requesting a stay, and I replied I was not requesting a stay.

On February 27, 2023, at a later conference before the Court, after I had retained new counsel, Judge Koetl denied a subsequent motion for a stay. However, during that same conference, Judge Koetl did say that if I had requested a stay when Ms. Peters-Hamlin withdrew, that he would have granted it.

Without counsel, my defense is disadvantaged for several reasons.

I need the advice of counsel to maintain my Whistleblower Protection against retaliation for the complaint I filed against STONEX with the Securities and Exchange Commission (SEC). In that complaint, I provided details of the following violative practices by STONEX:

1. On the job use of cocaine by STONEX's Managing Director of Institutional Sales (AM), and on the job use of cocaine by STONEX's Retail Traders in Winter Park, Florida while they were handling retail public orders.

2. On the job texting on personal phones using the messaging app Signal, by several employees at STONEX, including Series 24 licensed supervisors THOMAS MOORE, Head of Equities Trading, CHRISTOPHER AMATO, Head of Principal Equities Development, and EVAN PFEUFFER, Co-Head of Quantitative Strategies. Signal has a feature which deletes messages after a timeout. This violates STONEX Supervisors' duty to maintain, preserve, or produce records to ensure the safety and integrity of the U.S. Markets by their Regulating Authorities.

    (a) On September 27, 2022, the SEC fined 8 broker dealers $125 million each, including Morgan Stanley, Goldman Sachs, Bank of America and Barclays, for using alternative texting apps, and thus failing to maintain and preserve electronic communications.

    (b) 64 pages of Signal messages were provided to the SEC.

3. Manipulation of public markets by STONEX's Retail Traders through a practice they called "managing the spread." The spread is the difference in price between buyers and sellers. If the spread is wide, then STONEX Retail Traders can buy stocks at cheap prices and sell them at expensive prices. This results in more profit. If the spread is thin, then there are less profits.

    STONEX Retail Traders were frustrated when they saw their spreads shrink after smaller legitimate buyers and sellers placed more competitive orders than STONEX. They referred to these smaller buyers and sellers as "pikers," and they boasted about "taking out the pikers" to "manage the spread." This artificially widened the spread and increased STONEX's profits, but at the expense of STONEX's retail public customers, who were filled at inferior prices. STONEX's Retail Traders referred to their retail customers as "dumb flow."

    (a) The STONEX Principal Equities business handles orders from a wide range of clients, such as Fidelity, Trade Station and RW Baird.

(b) It is in the public interest for the SEC to investigage how STONEX is mishandling public retail orders.

I also need the advice of counsel to maintain my Whistleblower Protection against retaliation for the complaint I filed against STONEX under the Sarbanes-Oxley Act of 2002 (SOX) with the Department of Labor (DOL). In addition to providing details for the violative practices above, I provided details for the following to the DOL Investigator:

1. The offensive description of my young daughters by STONEX's Managing Director of Institutional Sales (AM) at a STONEX corporate-sponsored event in Winter Park, Florida. At a dinner attended by approximately two dozen STONEX employees, AM shouted to me across the room, "When did your daughters become c*nty?" He continued to shout this insult several times while sitting at the same table as my managers, JACOB RAPPAPORT, Global Head of Equities, and THOMAS MOORE.

   My managers took no action.

I also need the advice of counsel to defend myself against allegations by STONEX that I have taken source code for a project called ▓▓▓▓. STONEX is seeking a Preliminary Injunction claiming Irreparable Harm.

1. I worked on the ▓▓▓▓▓▓▓▓ at STONEX which traded a number of strategies. During my time on the team, the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ in just a few months. Every strategy was a failure, and they each lost money. This is not just my opinion, but a simple matter of accounting.
2. Opposing counsel, MR. CHINN is aware of the monetary losses by the ▓▓▓▓▓▓▓▓, yet he chose to mislead this Court when he declared that my current firm, DV Trading "would sure like to get their hands on ▓▓▓▓." It seems MR. CHINN is testifying about a fictitious conversation he had with DV Trading. Yet common sense tells us that trading firms work hard to make money. They are not interested in failed strategies that lose money. Likewise, DV Trading would have no interest in losing strategies.

I also need the advice of counsel to protect my Whistleblower Immunity under the Defend Trade Secrets Act of 2016 (DTSA) for evidence that I filed under seal with this Court for the violation of law by EVAN PFEUFFER; whereby he stole source code from BTIG for the economic benefit of it's competitor, STONEX. That evidence under seal is approximately 2,000 pages of the source code which PFEUFFER stole. I was authorized to access this code as part of my duties at STONEX.

1. PFEUFFER joined the ▓▓▓▓▓▓ team and renamed BTIG's source code to ▓▓▓▓▓, then he used it to generate substantial revenue in 2022 (see para. 17(iv) of STONEX's complaint under FACTS).
2. PFEUFFER was not tidy when he stole BTIG's trade secrets. He kept numerous references to "BTIG" and their associated numerical values which are used in its algorithms and logic (see examples ECF 51, pp 2-3).
3. The stolen source code contains a reference and numerical value for "MATT FITZPATRICK" (see ECF 51, p.4). Matthew Fitzpatrick is the Managing Director of Technology at BTIG, and he is responsible for BTIG's software development. Mr. Fitzpatrick is also a member of the firm's Global Operating Committee.
4. On September 29, 2017, while PFEUFFER was employed at BTIG, he emailed several source code files from his personal gmail account. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
5. On January 14, 2021, while PFEUFFER was employed at BTIG, he prepared code to steal from BTIG and import it to STONEX. On Google Chat, he explained, "I'm organizing code for our new venture."
6. On January 15, 2021, the next day, PFEUFFER signed his STONEX Employee Agreement and accepted the new job at STONEX. However, he gave his notice to BTIG weeks later.
7. On February 8, 2021, PFEUFFER used Signal chat messages to describe the sophisticated technique he used to steal BTIG source code, namely using a "hidden encrypted payload appended to pdf." He also announced his intent to "keep it secret, keep it safe like the ring."
8. On February 10, 2021, PFEUFFER used Signal chat messages to boast in real-time as he extracted BTIG source code onto his STONEX laptop. He celebrated with the comment, "The eagle has landed."
9. PFEUFFER kept files and logic in the stolen source code for connecting to FlexTrade (see examples ECF 51, pp. 65-69), which is another firm that routes and executes trades. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
10. PFEUFFER kept files and logic in the stolen source code containing several methods for pricing European Options (see examples ECF 51, pp. 53-54, 59), but the ▓▓▓▓▓▓▓▓ did not trade options. Moreover, equity options are traded and priced as American Options, not European Options.
11. STONEX Management is aware of this evidence, and PFEUFFER is still employed at STONEX to generate more

    revenue for their economic benefit.

12. Previous to STONEX, PFEUFFER was investigated by the New York Attorney General (NYAG) for market manipulation techniques such as "rip and print." The NYAG has already seen PFEUFFER's code. If they had access to the ▮▮▮▮▮▮▮▮ on file with this Court, they would confirm identical features on a line-by-line basis with the code that they investigated before.

13. The Signal Chat messages and Google Chat messages which are referenced above, have been provided to the Securities and Exchange Commission (SEC).

I also need the advice of counsel to prevent CHARLES RIVER ASSOCIATES from repeatedly leaking my Attorney Client Privileged Communications to STONEX. They took these actions in violation of the Court Ordered Forensic Review Protocol. The access by STONEX to my privileged communications has put my defense at a considerable disadvantage. I need the advice of counsel to seek a remedy from this Court.

1. The Plaintiff's expert, CHARLES RIVER ASSOCIATES visited my home and were given direct digital access to my computer, laptop, phone, iPad and USB devices where they took digital copies. These devices contained privileged communications, but I voluntarily agreed to this examination subject to a Forensic Review Protocol which was so ordered by this Court to protect my privileged information. I was relying on the professionalism and competence of CHARLES RIVER ASSOCIATES; that they would obey the Court Order, and I also relied on the enforceability of the Court Order by the Court.

2. The Plaintiff's expert, CHARLES RIVER ASSOCIATES, has provided me with 414,113 files to review for privileged information. To protect my Attorney Client Privileged Information, the Court Order requires that I create a privilege log, and identify: (a) Type of document (e.g., letter, memoranda, etc.); (b) Name of author or preparer; (c) Name of recipient; (d) Data of recording or preparation; (e) Description of the subject matter and content of the document sufficient to identify it; and (f) The reason for the claim of privilege and/or exclusion.

3. Many of the files do not contain sufficient information to complete the privilege log.

4. I have not received, sent or participated in 414,113 digital communications in aggregate over my lifetime.

5. Yet somehow in their zeal to be thorough and complete in the protection of my privileged communications, CHARLES RIVER ASSOCIATES have admitted to breaching the Court Ordered protocol on March 29, 2023, when they leaked 530 privileged documents to the Plaintiff, namely communications with my attorneys. I am still waiting on Plaintiff to provide a full accounting of the breach to assess the extent to which my defense has been disadvantaged.

6. Then on May 17, 2023, to add insult to injury, CHARLES RIVER ASSOCIATES leaked *more* of my privileged communications to STONEX. Apparently, these leaks are not simply accidents, but a systemic pattern of misconduct by CHARLES RIVER ASSOCIATES to disregard the Court Ordered protocol for the benefit of their patron, MR. CHINN and PROSKAUER ROSE. Plaintiff has again provided no accounting for these leaks.

I also need the advice of counsel to defend myself against STONEX's persistent bullying and abuse. Apparently, STONEX believes they can avoid regulatory oversight, investigations and fines if they sufficiently smear my name and drain my financial resources.

Indeed, MR. CHINN and PROSKAUER have already been reminded in a Court Order to "comport themselves with decency" (see Johnson v Everyrealm, Inc, 22-cv-06669-PAE, ECF 84).

1. StoneX Group is a Fortune 100 company that trades on the NASDAQ Stock Exchange under the symbol SNEX.

2. Proskauer Rose is an prominent international law firm headquartered on Times Square in New York, NY.

3. I am a private citizen and whistleblower without an attorney and limited means.

Yet the evidence is clear. It is in the public interest that STONEX's misconduct and violative practices be reviewed by Regulatory Authorities.

For the foregoing reasons, I respectfully submit that my request for a stay should be granted; a stay for 30 days, or when I have retained counsel; whichever comes sooner, while the status quo of the action is maintained. See e.g. Allen v. Krucial Staffing LLC, No. 20-cv-2859, 2022 WL 2106447 (S.D.N.Y. June 9, 2022) (Koeltl, J.)

Respectfully submitted,

/s/ Howard Shipman

Howard Shipman