UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
STONEX GROUP INC. and STONEX      :
FINANCIAL INC.,                    :     Case No. 23-CV-613 (JGK)
                                   :
               Plaintiffs,     :
                                   :
          v.                    :
                                 :
HOWARD SHIPMAN,           :
                                 :
               Defendant.    :
-------------------------------------------------------------X

### **DEFENDANT'S MOTION FOR LEAVE TO FILE A SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO PLAINTIFF STONEX'S MOTION FOR SANCTIONS**

Howard Shipman
15 Tudor Ln.
Trumbull, CT 06611
(203)536-9534
jovejava@yahoo.com

Defendant, Howard Shipman ("Defendant" or "Shipman"), representing himself Pro Se, respectfully moves this Court for the entry of an Order granting Defendant the right to file a Supplemental Memorandum in Opposition to Plaintiff StoneX's Motion for Sanctions, a copy of which is attached hereto, and for its reasons relies upon the following:

Defendant timely filed its Reply in Opposition to Plaintiffs' Motion for Sanctions on October 19, 2023. However, new information has come to light that was previously unavailable. This new information is significant and directly relevant to Plaintiffs' Motion and Shipman's defense.

Defendant respectfully requests that the Court enter an Order:

1. Granting Howard Shipman the right to file the attached Supplemental Memorandum in Opposition to Plaintiff StoneX's Motion for Sanctions.

2. Granting such other and further relief to which this Court finds the Defendant otherwise entitled.

Defendant

Dated: January 3, 2024
Trumbull, CT

/s/ Howard Shipman
15 Tudor Ln.
Trumbull, CT 06611
(203)536-9534
jovejava@yahoo.com

2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
STONEX GROUP INC. and STONEX       :
FINANCIAL INC.,                 :     Case No. 23-CV-613 (JGK)
                                :
               Plaintiffs,    :
                                :
        v.                  :
                                :
HOWARD SHIPMAN,          :
                                :
             Defendant.    :
-------------------------------------------------------------X

**<u>DEFENDANT'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO PLAINTIFF
STONEX'S MOTION FOR SANCTIONS</u>**

Howard Shipman
15 Tudor Ln.
Trumbull, CT 06611
(203)536-9534
jovejava@yahoo.com
Defendant

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ 2

INTRODUCTION ...................................................................................................... 3

PRELIMINARY STATEMENT .................................................................................. 4

STATEMENT OF FACTS .......................................................................................... 4

I.      BTIG Files $200 Million Complaint Against STONEX for Theft of Trade Secrets ......... 4

      A.      Independent Forensic Exam Concludes STONEX Copied Source Code ............... 5

      B.      STONEX Hires AMATO and Raids BTIG to Steal Trade Secrets ........................ 6

      C.      STONEX Hires BHADURI to Take BTIG's Trade Secrets ................................... 7

      D.      STONEX Hires PFEUFFER to Take BTIG's Trade Secrets ................................. 8

ARGUMENT ............................................................................................................. 10

I.      STONEX's Violations of Law are Extensive, Elaborate and Habitual ............................ 10

II.     As a Whistleblower, I am Collatoral Damage ................................................................. 10

CONCLUSION ......................................................................................................... 11

## **INTRODUCTION**

Defendant, Howard Shipman, respectfully submits this Supplemental Memorandum in opposition to plaintiffs' motion for sanctions. I do not have legal representation. On July 5, 2023, I declared bankruptcy in the Connecticut Bankruptcy Court. My bankruptcy petition was filed after I incurred large litigation costs for my defense. I have no legal training, and I am relying on the "Instructions for Litigant's Who Do Not Have Attorneys" mailed to me by this Court. This response is made *pro se*.

This Supplemental Memorandum provides information that was previously unavailable on October 19, 2023. Namely, on November 13, 2023, BTIG, Inc filed a complaint seeking at least $200 million in damages from STONEX for Theft of Trade Secrets. BTIG was the former employer for 6 members of my team at STONEX. I was the only team member who did not previously work at BTIG.

This Supplemental Memorandum refers to that Complaint and discusses the relevance to Plaintiffs' motion.

Since I am untrained in the law and unfamiliar with motion practice, I will use common sense arguments to state my opposition to Plaintiffs' motion.

3

## PRELIMINARY STATEMENT

Plaintiffs' accusations and slanders are false. Indeed, Plaintiffs are acting out of desperation as they face serious litigation on multiple fronts with potential damages exceeding $1 billion. Unable to build a reputable business that is based on honesty and hard work, STONEX have resorted to theft, deceit and bullying tactics to take what they want, from whomever they want.

Moreover, they have granted safe harbor to thieves and perjurers, and they have instituted a bounty system that incentivizes the raiding of trade secrets from their competitors.

In the complaint that BTIG filed against STONEX, we see that Plaintiffs have been involved in a frantic cover-up to protect their illicit profits for over a year. As a whistleblower, I am simply collateral damage in their campaign to raid, pillage and hide trade secrets from BTIG. Meanwhile, the SEC has thousands of messages to review which were sent over the encrypted texting app, Signal that STONEX supervisors used to conduct business and coordinate their illegal activities. Those fines will be very large.

Plaintiffs are abusing this Court to use discovery for their defenses in other matters.

Accordingly, for the reasons stated above and set forth in further detail herein, Plaintiffs' motion for sanctions should be denied in its entirety.

## STATEMENT OF FACTS

### I.   BTIG Files $200 Million Complaint Against STONEX for Theft of Trade Secrets

On November 13, 2023, in the Superior Court of California, County of San Francisco, BTIG, Inc filed a complaint seeking at least $200 million in damages against STONEX to "put an end to one of the greatest financial-industry trade secret frauds in recent history." (BTIG v. StoneX, 2023, CGC-23-610525, Complaint, ¶1).

"Defendant StoneX recruited a team of BTIG traders and software engineers to exfiltrate BTIG software code and proprietary information and take it to StoneX."

"StoneX used the code as well as other proprietary and confidential BTIG information supplied by the former BTIG employees to build competing products and business lines that generate tens of millions of dollars annually on the back of BTIG intellectual property that BTIG spent years developing."

"Meanwhile, StoneX engaged in a campaign of deceit and misrepresentation to conceal the theft…"
(BTIG v. StoneX, ¶1).

STONEX perpetrated an elaborate scheme that engaged 6 former BTIG employees named in the complaint, plus 10 Doe defendants. I believe that number is too low given the depravity I witnessed at STONEX.

BTIG further states that given "the lengths StoneX and the employees it hired went to cover their tracks, and the lies and deception that StoneX perpetrated, the scope of StoneX's unjust enrichment is not presently known and may easily exceed a billion dollars." (BTIG v. StoneX, ¶14).

This unjust enrichment is almost a full year of Operating Income for STONEX, and if it were awarded to BTIG, then STONEX might not survive. Additionally, STONEX still faces $100 million or more in fines which the SEC could impose for STONEX's pervasive use of Encrypted Text Messaging for conducting business. It does not appear Plaintiffs have set aside any litigation contingency reserve for these actions which is a violation of the Financial Accounting Standards Board's ("FASB") Standards for Contingencies.

## A.    Independent Forensic Exam Concludes STONEX Copied Source Code

In June 2023, BTIG and STONEX *jointly* retained an independent expert, Robert Zeidman, to conduct a forensic analysis of the stolen source code ("TAMPA") and BTIG code.

Indeed, the TAMPA code is the 2,000 pages of evidence that was preserved and filed with this Court under seal to report or investigate a violation of law.

Zeidman had "expertise in the determination of whether one computer program has been copied from another computer program." (BTIG v. StoneX, ¶¶215-216).

On August 1, 2023, in Zeidman's report, "Final Forensic Source Code Analysis of StoneX and BTIG Source Code", Zeidman concluded that "based on his extensive analysis performed by comparing BTIG code files to StoneX Tampa code, it is [Zeidman's] conclusion that StoneX copied code from BTIG." (BTIG v. StoneX, ¶218).

### B.    STONEX Hires AMATO and Raids BTIG to Steal Trade Secrets

In December 2020, STONEX hired BTIG trader, CHRISTOPHER DENNIS AMATO (FINRA CRD #2406790)[1] to become Managing Director and Head of Principal Equities Development.

AMATO was recruited and hired by CHARLES MARTIN LYON (FINRA CRD #4000852)[2]. LYON is currently the CEO of StoneX Financial Inc. Previously, in 2001, LYON and AMATO worked together at International Assets Advisory which later became STONEX.

At International Assets Advisory, LYON was an intern, and he reported directly to AMATO.  Later, in 2020, LYON hired his old boss, AMATO, and LYON gave him an aggressive mandate to launch a new competitive trading business ("PASCAL"). AMATO immediately "recruited and hired five carefully placed BTIG trading and software development personnel to carry off and incorporate into StoneX's code and systems BTIG's most sensitive software code, algorithms, client information, and proprietary business strategies." (BTIG v. STONEX, ¶86).

---

[1] FINRA CRD Numbers and other history are made publicly available by FINRA to satisfy SEC regulations for Registered Representatives.

[2] See footnote 1.

AMATO gave frequent updates to LYON on his progress with the PASCAL team. After the team was hired, LYON rewarded AMATO with a flight by private jet to Florida. On the organizational chart, AMATO and the PASCAL team were in Equities, but LYON arranged meetings with other teams beyond Equities which traded other asset classes. LYON was preparing AMATO and the PASCAL team to "digitize" all STONEX business lines.

BTIG's subsequent forensic investigation discovered that AMATO took from BTIG significant amounts of BTIG confidential and proprietary information. AMATO exfiltrated company schematics, pitchbooks, tear sheets, and internal market analyses. (BTIG v. STONEX, ¶104).

### C.   STONEX Hires BHADURI to Take BTIG's Trade Secrets

DEBAYAN BHADURI was a Managing Director at BTIG, and he was hired by AMATO to join the new PASCAL team at STONEX.

A forensic investigation by BTIG found that "BHADURI sent at least 19 emails from his BTIG email account to his personal Gmail account containing BTIG's highly confidential, proprietary and trade secret information." (BTIG v. STONEX, ¶119).

At 9:21am, on February 2, 2021, BHADURI sent a message using the encrypted messaging app, Signal.

> BHADURI: "Resignation sent bros. All done. They will shut me down today so I have to make some notes etc."
> (see Exhibit A).

In February and March of 2021, BTIG communicated with STONEX regarding the theft that was uncovered by their forensic investigation. BHADURI signed an affirmation, under the penalty of perjury:

> BHADURI's SWORN AFFIRMATION: "I have not otherwise provided or disclosed or indirectly (including verbally) any BTIG Confidential

Information (as defined in the BTIG Offer Letter I signed dated August
22, 2013 (the "Offer Letter") to any third-party (including, but not
limited to StoneX), and I agree that I will not do so in the futures."
(BTIG v. StoneX, ¶205, also see Exhibit C).

After this statement, STONEX made a one-time payment of approximately $50,000 to

BHADURI over and above his regular salary and bonus. This was paid by STONEX to

compensate BHADURI regarding the dispute with BTIG. It was a bounty for bringing trade

secrets from BTIG to STONEX.

### D.   STONEX Hires PFEUFFER to Take BTIG's Trade Secrets

EVAN PFEUFFER was a Managing Director at BTIG, and he was also hired by AMATO

to join the new PASCAL team at STONEX.

PFEUFFER was disgruntled at BTIG. He felt BTIG took advantage of him, and that

BTIG did not pay him enough. At 8:26am, on February 21, 2021, PFEUFFER sent a message

using the encrypted messaging app, Signal:

PFEUFFER: "It's done, I wont[sic] change my mind. These guys robbed
us. I've let stone and crew know the deed is done."
(see Exhibit B).

PFEUFFER also signed an affirmation, swearing under the penalty of perjury:

PFEUFFER's SWORN AFFIRMATION: "I have not retained in my
possession, custody or control any documents, material or information
constituting or containing BTIG Confidential Information (as defined in
the BTIG Offer Letter I signed dated April 21, 2015 (the "Offer Letter")),
including Confidential Information maintained in electronically-stored
format."

"I have not provided or disclosed, directly or indirectly, any BTIG
Confidential Information to any third-party (including, but not limited to,
INTL FCStone Inc., StoneX, Inc., or any affiliate, employee or agent
thereof), including Confidential Information maintained in
electronically-stored format, and I will not do so in the future."

> "I have not used, in any way, BTIG Confidential Information except for the benefit of BTIG, and I will not do so in the future."

> "I have and will continue to comply with the Confidential Information, Return of Documents and other Property and Restrictive Covenants provisions set forth in Sections 11, 12 and 13 of the Offer Letter."
> (BTIG v. StoneX, ¶204, also see Exhibit C).

Based on BTIG's forensic review, PFEUFFER logged onto BTIG servers to collect and remove key code. Indeed, this was the same PASCAL source code that was preserved and filed with this Court under seal to report or investigate a violation of law.

BTIG's forensic review also uncovered the technique PFEUFFER used to exfiltrate BTIG's source code:

> "PFEUFFER took large swathes of code and other proprietary information and encrypted them using NSA-level encryption techniques, rendering the payload a meaningless string of gobbleygook to anyone without the encryption key. PFEUFFER then appended the encrypted code to pdf versions of generic documents that were downloaded from the internet."

> "PFEUFFER then used BTIG's automated email server for sending client reports to email the PDFs – with the encrypted code appended – to himself."
> (BTIG v. StoneX, ¶139).

This is the same activity PFEUFFER described over the encrypted messaging app, Signal when he explained as "hidden encrypted payload appended to pdf."

STONEX and PFEUFFER have refused BTIG's requests that they turn over the encryption keys so that BTIG may view the full scope of the specific code and other material that was exfiltrated. (BTIG v. StoneX, ¶144).

## ARGUMENT

### I.        STONEX's Violations of Law are Extensive, Elaborate and Habitual

Plaintiffs in the C-suite have been aware of violations by Line Managers and Supervisors for years. It is not only condoned, but it is incentivized. Why are those same managers still gainfully employed by STONEX, despite irrefutable proof of their violations and misconduct, including Theft of Trade Secrets, Perjury, and Violations of several SEC regulations, including the manipulation of public markets?

Plaintiffs' arguments rely on the false testimonies of STONEX's thieves and perjurers. Those declarations should be thrown out.

### II.       As a Whistleblower, I am Collateral Damage

As a whistleblower, I am simply collateral damage in a $1 billion dispute between BTIG and StoneX. Eventually, this will include $100+ million litigation brought by the SEC.

In Plaintiffs' zeal to smear my character, they hired 30+ analysts from CHARLES RIVER ASSOCIATES who *repeatedly* leaked privileged documents to Plaintiffs in multiple violations of this Court's Order. Likely, this was due to extreme pressure to find materials for their defenses in other litigation. It is a flagrant abuse of discovery to use any of these materials in other litigation.

I did not take Darwin source code. I left Plaintiffs with 2 copies of Darwin source code, including PFEUFFER who discussed working on the Darwin code almost daily. I did not deprive StoneX of that code. I do not have that code. I did not destroy that code. The only materials I relocated were private health and mental records related to my family and children, and I have already informed Plaintiffs.

But why have Plaintiffs manufactured their faux outrage? When fabricating the thinnest of premises for their complaint, did they not bother to check the large sums of money that the

Darwin project lost? Certainly, 30+ CRA analysts are disproportionate to the *negative* value of the Darwin project.

We now know Plaintiffs have 1 billion reasons to employ 30+ CRA analysts, and this is wholly unrelated to the Darwin project. Plaintiffs have employed bullying tactics to smear me and bankrupt me with litigation costs in a last desperate attempt to defend themselves in other litigation.

But do smears and bankruptcy remove "BTIG" from the stolen source code filed with this Court? Does it erase the name of BTIG's Director of Technology explicitly included in the files? Does Plaintiffs' retaliation change the conclusion reached by an independent expert that STONEX copied the BTIG code? That same independent expert was *jointly* retained by both STONEX and BTIG.

## **CONCLUSION**

Plaintiffs' motion for discovery sanctions must be denied. Plaintiffs will be entangled in substantial litigation for many years to come. The consequences for Plaintiffs' violations have come home to roost. Plaintiffs should not be rewarded for their misconduct and abuse of this Court for litigation with other parties. Moreover, Plaintiffs' efforts in discovery are completely disproportionate to the explicit value of the Darwin project. That exuberance was motivated by Plaintiffs' defenses in substantial litigation for other matters.

For the foregoing reasons, defendant, Howard Shipman, respectfully requests that plaintiffs' motion for sanctions be denied in its entirety, together with such other and further relief as this Court deems just and proper.

11

Dated: January 3, 2024
Trumbull, CT

/s/ Howard Shipman
15 Tudor Ln.
Trumbull, CT 06611
(203)536-9534
jovejava@yahoo.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
STONEX GROUP INC. and STONEX      :
FINANCIAL INC.,                      :       Case No. 23-CV-613 (JGK)
                                         :
               Plaintiffs,      :
                                         :
               v.                    :
                                       :
                                     :
HOWARD SHIPMAN,           :
                                     :
               Defendant.    :
------------------------------------------------------------------X

## **DECLARATION OF HOWARD SHIPMAN FOR SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO PLAINTIFF STONEX'S MOTION FOR SANCTIONS**

Howard Shipman, hereby declares under penalty of perjury as follows:

1.      I am the Defendant in the above-referenced matter. I am fully familiar with the facts and circumstances recited herein from personal knowledge and from my review of documents in this matter.

2.      I submit this Declaration for Supplemental Memorandum in Opposition to StoneX's Motion seeking sanctions.

3.      Attached hereto as **Exhibit A** is a true and correct copy of Signal Chat Messages on February 1, 2021, from 8:26am to 8:44am, with Christopher Amato, Evan Pfeuffer and Debayan Bhaduri.

4.      Attached hereto as **Exhibit B** is a true and correct copy of Signal Chat Messages on February 2, 2021, from 8:43am to 9:21am, with Christopher Amato, Evan Pfeuffer and Debayan Bhaduri.

5.      Attached hereto as **Exhibit C** is a true and correct copy of an excerpt from BTIG

v. StoneX, 2023, CGC-23-610525, Complaint, Superior Court of California, County of San

Francisco, pages 42-43, paragraphs 202–210.

I declare under penalty of perjury that the foregoing is true and correct.

Trumbull, CT
Dated: January 3, 2023

/s/ Howard Shipman
Howard Shipman
15 Tudor Ln.
Trumbull, CT 06611
Email: jovejava@yahoo.com
Phone: (203)536-9534

# EXHIBIT A



# EXHIBIT B



# EXHIBIT C

202.    Pursuant to the terms of the March 5, 2021 Agreement, which was signed by StoneX's Assistant General Counsel, Craig L. Hymowitz, StoneX, Bhaduri and Pfeuffer agreed to "take all necessary steps to permanently delete all BTIG Emails, attachments thereto, and the contents or information contained therein" and to direct any StoneX employees that "saved, received, downloaded or printed" a forwarded BTIG email or information contained therein "to delete or destroy the information to the fullest extent possible". Further, StoneX agreed "not to use any BTIG Email, the attachment or the information therein in any way (other than use by its counsel in connection with this dispute and Letter Agreement)."

203.    The March 5, 2021 Agreement also required both Bhaduri and Pfeuffer to sign affirmations (the "Affirmations"), under the penalty of perjury, swearing that they had not disclosed BTIG confidential or proprietary information to StoneX, would not do so in the future, and had not retained any such information.

204.    Pfeuffer as an employee of StoneX signed an affirmation, swearing under the penalty of perjury, that:

     a.  "I have not retained in my possession, custody or control any documents, material or information constituting or containing BTIG Confidential Information (as defined in the BTIG Offer Letter I signed dated April 21, 2015 (the "Offer Letter"), including Confidential Information maintained in electronically-stored format."

     b.  "I have not provided or disclosed, directly or indirectly, any BTIG Confidential Information to any third-party (including, but not limited to, INTL FCStone Inc., StoneX, Inc., or any affiliate, employee or agent thereof), including Confidential Information maintained in electronically-stored format, and I will not do so in the future."

     c.  "I have not used, in any way, BTIG Confidential Information except for the benefit of BTIG, and I will not do so in the future."

       d.   "I have and will continue to comply with the Confidential Information, Return of Documents and other Property and Restrictive Covenants provisions set forth in Sections 11, 12 and 13 of the Offer Letter."

205.    Bhaduri as an employee of StoneX signed an affirmation, swearing under the penalty of perjury, that:

       a.   "I have not otherwise provided or disclosed, directly or indirectly (including verbally) any BTIG Confidential Information (as defined in the BTIG Offer Letter I signed dated August 22, 2013 (the "Offer Letter")) to any third-party (including, but not limited to, StoneX), and I agree that I will not do so in the future."

206.    Relying on these assurances and sworn statements, BTIG signed the March 5, 2021, Agreement and did not take legal action against StoneX.

207.    However, those representations were false. As described herein, StoneX, Pfeuffer, and Bhaduri not only retained and continued to possess BTIG confidential information but went on to use BTIG's confidential and proprietary information in violation of their Offer Letters, other contractual obligations to BTIG, and sworn affirmations.

208.    In addition, StoneX, Pfeuffer, and Bhaduri violated the March 5, 2021 Agreement by continuing to possess and misuse BTIG's proprietary information on behalf of StoneX.

209.    Bhaduri, Pfeuffer and StoneX knowingly made false representations in the March 5, 2021 Agreement and the attached Affirmations, in order to mislead BTIG into not taking further action so that StoneX could profit from the use of BTIG's confidential, proprietary and trade secret information, including additional information beyond what was discovered the BTIG Bhaduri Emails.

**G.    BTIG Discovers that StoneX Possesses Proprietary Software Code Stolen by Evan Pfeuffer**

210.    In January 2023, in connection with a lawsuit between StoneX and one of its former employees, a StoneX engineer who worked with both Bhaduri and Pfeuffer to develop software code for StoneX revealed a scheme by the Disloyal Employees and StoneX to incorporate BTIG's