UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
STONEX GROUP INC. et al.,

                                   Plaintiffs,

            -against-

HOWARD SHIPMAN,

                                  Defendant.
------------------------------------------------------------------X

23-CV-00613 (JGK) (VF)

**OPINION & ORDER**

**VALERIE FIGUEREDO, United States Magistrate Judge.**

Before the Court is a motion by non-party BTIG, LLC ("BTIG") to intervene under Rule 24(b) of the Federal Rules of Civil Procedure for the limited purpose of accessing documents that were filed in this case under seal. ECF No. 139 at 4.[1] Plaintiff StoneX Group, Inc. ("StoneX") opposes the motion. See ECF No. 42. Defendant Howard Shipman ("Shipman") does not oppose the motion. For the following reasons, BTIG's motion to intervene is **GRANTED**.

## BACKGROUND[2]

### A. The present action

StoneX is a publicly traded, financial-services organization. ECF No. 30 at ¶¶ 2, 8. In February 2021, StoneX hired Shipman to be co-head of Quantitative Strategies at StoneX Financial. Id. at ¶¶ 4, 10. In that role, Shipman developed certain confidential and proprietary electronic-market-making software for StoneX. See id. at ¶¶ 53-57, 68. On December 9, 2022, StoneX terminated Shipman's employment. Id. at ¶¶ 10, 15, 71-73.

---

[1] The page numbers referenced herein for citations to the electronic docket ("ECF") are to the ECF-generated pagination.

[2] A full recitation of the factual background of StoneX's case against Shipman is recounted in the Court's February 5, 2024 Report & Recommendation, familiarity with which is presumed. See ECF No. 134 at 2-15.

On January 24, 2023, StoneX commenced this action against Shipman, asserting claims for violations of the Defend Trade Secrets Act, 18 U.S.C. §§ 1839 et seq., the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(c), and misappropriation of trade secrets, breach of fiduciary duty, and conversion. ECF No. 30 at ¶¶ 119-53. The complaint alleges that Shipman, following his termination and without authorization, logged into StoneX's servers and executed an "unknown number of commands, deletions, and/or other actions," including extracting 87 megabytes of data from StoneX's server. Id. at ¶¶ 75-89. StoneX filed its complaint in this case under seal. See ECF No. 12 at 1.

On January 24, 2023, StoneX also filed under seal a motion for a temporary restraining order against Shipman and a memorandum of law in support of the motion. See ECF No. 12 at 1; ECF No. 31. In further support of its motion, StoneX filed various other documents under seal: (1) a Declaration of Evan Pfeuffer, Managing Director and Co-head of Quantitative Strategies at StoneX (ECF No. 32 at ¶ 1); (2) a Declaration of Christopher Amato, Managing Director of Principal Equity Development at StoneX (ECF No. 33 at ¶ 1); (3) a Declaration of Michael Wareman, Assistant Director of Cyber Security at StoneX (ECF No. 35 at ¶ 1) and the accompanying Exhibit 2 to that declaration; (4) a Declaration of R. Cuyler Robinson, Vice President of Forensic Services at Charles River Associates (ECF No. 36 at ¶ 2); (5) Exhibit 1 to the Declaration of Anne Johnson, Global HR Business Partner at StoneX (ECF No. 34 at ¶ 1); and (6) a January 27, 2023 Declaration of Howard Shipman (ECF No. 37-1).[3] See ECF No. 12 at 1. On February 16, 2023, all of these documents, along with StoneX's complaint and its

---

[3] Shipman filed his declaration under seal on January 27, 2023. See ECF No. 37-1 at 22. StoneX annexed the same declaration as an exhibit to a letter motion dated February 7, 2023, and filed it under seal. See ECF No. 24-3. The Court ordered StoneX to refile the declaration with redactions. See ECF No. 12 at 2. StoneX subsequently filed a redacted version of the declaration on February 22, 2023. See ECF No. 37-1.

memorandum of law in support of its motion for a temporary restraining order, were permanently sealed. Id. On February 22, 2023, StoneX filed redacted versions of the sealed documents on the public docket. See ECF Nos. 30, 31, 32, 33, 34-1, 35, 35-2, 36, 37-1.

On March 14, 2023, Shipman filed an answer to StoneX's complaint, and he asserted various counterclaims in his answer. ECF No. 56. Shipman also filed a declaration in connection with his answer and counterclaims, to which he attached an exhibit that displayed a "full and complete copy" of certain StoneX source code. See ECF No. 56 at ¶ 276 n.5; ECF No. 57-1. In his answer, Shipman asserted that the code had been illegally taken from BTIG by a StoneX employee who was a former BTIG employee. See, e.g., ECF No. 56 at ¶¶ 226, 258-62. Shipman moved to file both his answer and his supporting declaration under seal. See ECF No. 55. The Court granted the motion to seal but directed Shipman to file redacted versions of the answer and declaration on the public docket. Id. Shipman filed a redacted version of his answer on April 24, 2023. See ECF No. 71.

### B. BTIG's suit against StoneX

BTIG, a competitor of StoneX, is a financial services firm. ECF No. 139 at 5. In 2023, BTIG "was alerted" that its former employees may have stolen substantial portions of source code and related proprietary information for use by StoneX in trading products. Id. Following an internal investigation, BTIG confirmed that former employees now working for StoneX had taken software code and other data before leaving BTIG. Id.; see also ECF No. 140-2 at ¶ 87. BTIG and StoneX subsequently retained an independent forensic expert to compare a limited portion of the StoneX code identified by Shipman in the documents filed in this case against a limited portion of BTIG's code that BTIG suspected had been taken by former employees. ECF No. 139 at 5. The forensic expert found "dozens of instances" where BTIG code "appear[ed] verbatim in StoneX's systems," which he opined could not "be explained in any way other than

3

copying." Id.; ECF No. 140-2 at ¶ 84. On November 11, 2023, BTIG sued StoneX in California state court. ECF No. 139 at 6; see also ECF No. 143 at ¶ 2; ECF No. 143-1; BTIG, LLC v. StoneX Group, Inc. et al., No. CGC-23-610525 (Cal. Sup. Ct., S.F. Cty).

### C. The instant motion

On March 8, 2024, BTIG moved pursuant to Rule 24 of the Federal Rules of Civil Procedure for permissive intervention for the limited purpose of obtaining access to certain materials filed under seal in this case. ECF Nos. 138-40. Specifically, BTIG seeks access to unredacted versions of: (1) StoneX's complaint; (2) StoneX's memorandum of law in support of its motion for a temporary restraining order; (3) the Declaration of Evan Pfeuffer; (4) the Declaration of Christopher Amato; (5) the Declaration of Michael Wareman and Exhibit 2 to that declaration; (6) the Declaration of R. Cuyler Robinson; (7) Shipman's January 27, 2023 Declaration; and (8) Shipman's Answer, Counterclaims, and Supporting Declaration dated March 13, 2023. See ECF No. 139 at 6-7; see also ECF Nos. 30, 31, 32, 33, 35, 35-2, 36, 37-1, 51, 56, 57, 57-1, 67, 71 (sealed and redacted copies of requested materials). BTIG believes that these materials may contain "the BTIG software code that was stolen and integrated into StoneX's trading systems and products," or facts or other evidence showing the transmission of BTIG's code from StoneX's systems. ECF No. 139 at 7. BTIG requests access to all this material on an attorneys' eyes-only basis, limited to outside counsel for BTIG. ECF No. 139 at 4.

On March 25, 2024, StoneX filed an opposition to BTIG's motion to intervene. ECF Nos. 142-43. Shipman filed a response indicating that he did not oppose BTIG's motion. ECF No. 144. BTIG filed a reply brief on April 1, 2024. ECF Nos. 145-46.

4

## DISCUSSION

### A. Intervention

Federal Rule of Civil Procedure Rule 24 permits a party to intervene in ongoing litigation as of right or by permission of the court. The Rule provides that "[o]n timely motion, the Court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In seeking permissive intervention under Rule 24(b), the "proposed intervenor bears the burden of demonstrating that it meets the requirements for intervention." Bldg. & Realty Inst. of Westchester and Putnam Ctys., Inc. v. State of N.Y., No. 19-CV-11285 (KMK), 2020 WL 5658703, at *5 (S.D.N.Y. Sept. 23, 2020). It is well settled that "the proper method for a nonparty to seek a modification of a protective order" is through permissive intervention under Rule 24(b). See AT&T Corp. v Sprint Corp., 407 F.3d 560, 562 (2d Cir. 2005).

"The district court's discretion under Rule 24(b)(2) is very broad." H. L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc., 797 F.2d 85, 89 (2d Cir. 1986) (citations omitted). However, the court "must 'consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'" AT&T Corp., 407 F.3d at 561-62 (quoting Fed. R. Civ. P. 24(b)). Other relevant factors to consider in deciding whether to allow permissive intervention are "the nature and extent of the intervenors' interests," "the degree to which those interests are adequately represented by other parties," and "whether [the] parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." H.L. Hayden Co. of N.Y., 797 F.2d at 89 (internal quotation marks and citations omitted).

BTIG seeks to intervene in this suit for the sole purpose of obtaining a modification to the Court's sealing orders, which would permit it access to certain materials that were filed under

5

seal. "[T]he proper method for a nonparty to seek a modification of a protective order" is through permissive intervention under Rule 24(b). AT&T Corp., 407 F.3d at 562 (citing Martindell v. Int'l Tel. & Tel. Corp., 594 F.3d 291, 293-94 (2d Cir. 1979)); see also Diversified Grp. Inc. v. Daugerdas, 217 F.R.D. 152, 157 (S.D.N.Y. 2003) ("It is well-settled that intervention pursuant to Rule 24(b) is the proper procedure for a third party to seek to modify a protective order in a private suit.").

The Court has already concluded that the entry of a default judgment against Shipman is appropriate as a sanction for his conduct in this litigation (see ECF No. 149 at 1-2, 12-13), and all that remains to be done is a determination of attorney's fees for StoneX's counsel (see ECF No. 151). Under these circumstances, intervention for the limited purpose of unsealing the documents sought by BTIG will not unduly delay or prejudice the adjudication of the rights of StoneX or Shipman, as the claims in this action have already been adjudicated. See Int'l Equity Invs., Inc. v. Opportunity Equity Partners, Ltd., No. 5-CV-2745 (JGK) (RLE), 2010 WL 779314, at *2 (S.D.N.Y. Mar. 2, 2010) (permitting intervention in case that had settled because intervention by party seeking to modify protective order would not delay the case or prejudice the original parties); Diversified Grp., Inc., 217 F.R.D. at 157-58 (granting intervention where the case had ended almost two years prior); see also In re Pineapple Antitrust Litig., No. 4-MD-1628 (RMB) (MHD), 2015 WL 5439090, at *1-2 (S.D.N.Y. Aug. 10, 2015) (granting motion to intervene to unseal documents even where "many years have passed since the conclusion of the case").

StoneX makes several arguments opposing BTIG's motion, but its arguments are focused solely on the propriety of BTIG's request to unseal the requested materials. See ECF No. 142 at 12-21. Whether the documents should be unsealed is a separate inquiry from whether BTIG

6

should be granted permissive intervention. Int'l Equity, 2010 WL 779314, at *2 (noting that the inquiry into intervention is "distinct" from the inquiry into modification of the protective order); see also In re Ethylene Propylene Diene Monomer ("EPDM") Antitrust Litig., 255 F.R.D. 308, 317 (D. Conn. 2009) ("In their brief opposing the motion to intervene and to modify the protective order, [defendants] spend the majority of their time opposing the modification [to the protective order] itself, while glossing over the fact that the modification is a separate inquiry from the threshold decision to grant intervention."). And nowhere does StoneX claim that permitting BTIG to intervene will unduly delay the resolution of this action or prejudice the original parties. See ECF No. 142. Further, the grant of intervention is on a limited basis—solely so that BTIG can obtain access to sealed documents—so BTIG "will not become a party to this case." S. New England Tel. Co. v. Glob. Naps, Inc., No. 4-CV-2075 (JCH), 2008 WL 11492786, at *1 (D. Conn. June 19, 2008) (recognizing that intervening party had an interest in intervening to unseal documents where it had pending litigation against defendant and "has had difficulty in obtaining discovery during that litigation"). For this reason, it is unnecessary to consider whether BTIG will contribute to the full development of the underlying factual issues in this case, because BTIG will not become a party if allowed to intervene.

In short, BTIG's motion to intervene is granted for the limited purpose of considering its request to unseal certain documents.

### B. Unsealing

BTIG seeks modification of two sealing orders for the limited purpose of accessing certain materials filed under seal. StoneX argues that BTIG should be denied access to these materials, because BTIG has not shown that the sealing orders were "improvidently granted," or demonstrated an "extraordinary circumstance" or "compelling need" for access to the sealed documents. ECF No. 142 at 13-14, 17-21. StoneX's arguments are meritless.

BTIG seeks to unseal "judicial documents," to which the common-law presumption in favor of access applies. See, e.g., Giuffre v. Maxwell, No. 15-CV-7433 (LAP), 2020 WL 133570, at *1 (S.D.N.Y. Jan. 13, 2020) (explaining that sealing documents filed with a court "implicates a common law and qualified First Amendment right of access to such documents") (internal quotation marks and citation omitted). There is no question that the pleadings BTIG requests access to—the complaint, Shipman's answer, and the declaration he filed in connection with his answer and counterclaims—are "judicial documents." See Bronx Conservatory of Music, Inc. v. Kwoka, No. 21-CV-1732 (AT) (BCM), 2021 WL 2850632, at *2 (S.D.N.Y. July 8, 2021) ("The parties' pleadings, including answers and counterclaims, are unquestionably judicial documents."). Further, the weight of the presumption of access to StoneX's complaint, Shipman's answer, and Shipman's declaration are strong. See Bernstein v. Bernstein Litowitz Berger & Grossmann LLP, 814 F.3d 132, 140 (2d Cir. 2016) ("A complaint . . . is the cornerstone of every case, the very architecture of the lawsuit, and access to the complaint is almost always necessary if the public is to understand a court's decision.") (internal quotation marks and citation omitted); Nielson Consumer LLC v. Circana Grp., L.P., No. 22-CV-3235 (JPO) (KHP), 2024 WL 3887152, at *2 (S.D.N.Y. Aug. 20, 2024) (noting that "there is a strong presumption of public access to an answer and counterclaims which are central to the determination of . . . substantive rights") (internal quotation marks and citation omitted).

Against the strong presumption of public access that applies to these judicial documents, the Court weighs two countervailing factors: "(1) the danger of impairing law enforcement or judicial efficiency; and (2) the privacy interests of those who resist disclosure." Sec. & Exch. Comm'n v. TheStreet.Com, 273 F.3d 222, 232 (2d Cir. 2001). In weighing the first factor, the relevant consideration is "whether public access to the materials at issue is likely to impair in a

material way the performance of Article III functions." United States v. Amodeo, 71 F.3d 1044, 1050 (2d Cir. 1995). StoneX raises no argument on this front and given the procedural posture of this case, disclosure of the requested documents would not impede the Court's adjudication of the only remaining issue in the case, which concerns an award of attorney's fees. StoneX's sole argument concerns its own privacy interests, arguing that the documents sought contain StoneX's proprietary and confidential business information. ECF No. 142 at 13-14. Even if the complaint, answer, and declaration contain StoneX's confidential and proprietary information, BTIG's requested relief adequately protects StoneX's privacy interests. BTIG is not seeking to unseal the complaint and answer in order to make them publicly available. BTIG does not even seek to make the documents available to itself. Instead, BTIG asks that the documents be made available only to its outside counsel. ECF No. 139 at 4. Allowing only outside counsel to review these materials alleviates any concerns of competitive injury which may stem from BTIG having access to StoneX's confidential materials. See Howard v. City of New York, No. 12-CV-933 (JMF), 2013 WL 174210, at *3 (S.D.N.Y. Jan. 16, 2013) (denying third party's motion to quash discovery request because any burden on third party's legitimate privacy interests could be minimized by a protective order designating the unsealed records as "attorney's-eyes-only").

BTIG also requests access to the documents filed with the Court in support of StoneX's motion for a temporary restraining order. ECF No. 139 at 6-7. Although documents submitted in connection with such a motion are typically considered "judicial documents," see, e.g., Next Caller, Inc. v. Martire, 368 F. Supp. 3d 663, 666 (S.D.N.Y. 2019), the Court did not rule on StoneX's motion for a temporary restraining order because StoneX withdrew its application after entering into a stipulation with Shipman. See ECF No. 23 at 1. Courts are split on whether documents filed in support of a motion which is never decided are "judicial documents."

Compare Giuffre, 2020 WL 133570, at *2, 4 ("[U]ndecided motions and the papers associated with them are not judicial documents," since they are not part of any "live controversy to which the [Article III] judicial power can extend."); Int'l Equity, 2010 WL 779314, at *4 (ruling that documents attached to a motion for a preliminary injunction which was resolved via stipulation did "not fall within the category of judicial documents" as "the [c]ourt did not use these documents to make a substantive determination") with Lohnn v. Int'l Bus. Machs. Corp., No. 21-CV-6379 (LJL), 2022 WL 3359737, at *3-4 (S.D.N.Y. Aug. 15, 2022) (concluding that documents filed in support of summary judgment motion that was later moot were judicial documents because of their potential relevancy to judicial function); Dawson v. Merck & Co., Inc., No. 12-CV-1876 (BMC) (PK), 2021 WL 242148, at *6 (E.D.N.Y. Jan. 24, 2021) (ruling that documents attached to a Daubert motion were judicial documents notwithstanding parties' settlement before motion was resolved).

  Regardless, even if the documents filed in support of the motion for a temporary restraining order are not judicial documents, BTIG has established an "extraordinary circumstance or compelling need" for the material sought, sufficient to justify modification of the Court's sealing orders. See Charter Oak Fire Ins. Co. v. Electrolux Home Prods, Inc., 287 F.R.D. 130, 132 (E.D.N.Y. Aug. 15, 2012); see also In re Term Commodities Cotton Future Litig., No. 12-CV-5126 (ALC) (JW), 2023 WL 6586705, at *1, *3 (S.D.N.Y. Oct. 10, 2023) (granting a proposed intervenor's "motion to intervene for the limited purpose of obtaining access to the docket materials filed under seal" where the intervenor had a "serious and unique interest" in obtaining access to those materials). In that regard, BTIG has demonstrated that the requested materials could contain software code and other trade secrets from BTIG's systems, which were improperly taken by BTIG employees now working for StoneX. See ECF No. 139 at 5-6. As BTIG explains, an

independent forensic expert found "dozens of instances in which long swathes of BTIG code appear verbatim in StoneX's systems" based on an analysis of the limited portions of the StoneX code identified by Shipman in his publicly-filed papers in this case. Id. at 5. BTIG sued StoneX in California state court based on this alleged misappropriation of its trade secrets. Allowing BTIG access to the material it seeks will assist it in protecting its intellectual property in the California suit. See, e.g., In re Ethylene Propylene Diene Monomer (EPDM), 255 F.R.D. at 313 (permitting intervention to modify protective order where intervening party sought material it believed would be "relevant in" pursuing a class action suit); see also In re Term Commodities Cotton Futures Litig., 2023 WL 6586705, at *3 (permitting access to sealed materials where material sought contained information relevant to issues to be litigated in motion practice).

And, as already discussed, there will be no discernible prejudice to StoneX from unsealing the requested materials, because the materials will not be shared with BTIG. BTIG seeks the materials for review by only its outside counsel. Allowing only outside counsel to review the materials alleviates any concern of a potential competitive injury to StoneX if the materials also contain StoneX's software code. See Charter Oak Fire Ins. Co., 287 F.R.D. at 134 (finding no prejudice to non-moving party where relevant discovery materials would be shared only with counsel for the party seeking modification).

StoneX argues that BTIG's motion is an improper attempt to circumvent limitations on discovery imposed on BTIG by the court in California. ECF No. 142 at 14-17. StoneX argues that a February 15, 2024 order in the California action limited BTIG to jurisdictional discovery while StoneX's motion to quash for lack of personal jurisdiction is pending in that court. Id. at 16-17. Contrary to StoneX's argument, the California court allowed BTIG to conduct discovery regarding "[StoneX's] alleged misappropriation of information from [BTIG]'s California

11

servers," and "[StoneX's] alleged continuing misappropriation with regard to California consumers." ECF No. 146-15 at 3. The materials BTIG seeks may concern the alleged misappropriation of BTIG's software code from its servers, which are in California where BTIG is based. BTIG is thus attempting to obtain the precise type of discovery that the California court said could proceed.

   In sum, as to StoneX's complaint, Shipman's answer, and Shipman's declaration filed in support of his answer and counterclaims, the presumption of public access that applies to those judicial documents weighs strongly in favor of granting BTIG access to that material. Further, as it relates to the documents filed in support of the motion for a temporary restraining order, BTIG has shown a compelling need for the material sufficient to warrant modification of the Court's sealing orders.

**CONCLUSION**

BTIG's motion to intervene for the limited purpose of accessing sealed documents is **GRANTED**. StoneX is ordered to provide outside counsel for BTIG with unredacted copies of the following documents: ECF Nos. 30, 31, 32, 33, 35, 35-2, 36, 37-1, 51, 56, 57, 57-1, 67, and 71. Outside counsel for BTIG is ordered not to provide unredacted copies of these materials to BTIG or any agent or principal thereof. The Clerk of Court is directed to terminate the motion at ECF No. 138.

**SO ORDERED.**

DATED:    New York, New York
          January 22, 2025

_____
VALERIE FIGUEREDO
United States Magistrate Judge