UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
STONEX GROUP, INC. et al.,

                              Plaintiffs,

                -against-

HOWARD SHIPMAN,

                            Defendant.
-----------------------------------------------------------------X

23-CV-00613 (JGK) (VF)

**OPINION AND ORDER**

**VALERIE FIGUEREDO, United States Magistrate Judge.**

      Before the Court is a motion for attorney's fees filed by Plaintiffs StoneX Group Inc. and StoneX Financial Inc. (collectively, "Plaintiffs"). See ECF No. 151. Plaintiffs request $436,047.57 in attorney's fees in connection with their successful motion for sanctions. See ECF No. 156 at 10;[1] see also ECF Nos. 106, 134, 149. Defendant Howard Shipman objects to the amount requested. See ECF Nos. 154, 155. For the reasons set forth below, Plaintiffs' motion is **GRANTED** in the amount of $152,812.19.

## BACKGROUND

      The Court assumes the parties' familiarity with the underlying facts of this case, which are set forth in detail in the Report and Recommendation (the "R&R") dated February 5, 2024. See ECF No. 134 at 2-15. As is relevant to the instant motion, on June 20, 2023, Plaintiffs filed a motion seeking spoliation sanctions pursuant to Federal Rule of Civil Procedure 37(e) against Defendant for his failure to preserve electronically stored information. ECF Nos. 106-07. Plaintiffs contended that Defendant intentionally destroyed electronically stored evidence, despite being under an obligation to preserve that evidence, to cover up his theft of Plaintiffs'

---

[1] The page numbers referenced herein for citations to the electronic docket ("ECF") are to the original page numbers in those documents.

proprietary and confidential computer source code. ECF No. 107. Plaintiffs argued that

Defendant's intentional destruction of evidence constituted spoliation under Rule 37(e), and

Plaintiffs sought terminating sanctions in the form of an order striking Shipman's pleadings and

precluding Shipman from putting forth any defense to Plaintiffs' claims in this matter. Id. at 16-

18, 26-30. Plaintiffs also sought monetary sanctions, in the amount of "all costs and expenses

incurred by Plaintiffs as a result of Defendant's deliberate acts of spoliation." Id. at 30-31.

Defendant, proceeding pro se, opposed the motion for sanctions on October 19, 2023.

ECF Nos. 120-21. On October 26, 2023, Plaintiffs filed a reply brief. ECF Nos. 122-23. On

January 3, 2024, Defendant submitted a supplemental memorandum in further support of his

opposition to Plaintiffs' motion. ECF No. 125. On January 18, 2024, the Court held oral

argument on the motion for sanctions. ECF Nos. 124, 130. On January 29, 2024, Defendant filed

a supplemental submission. ECF No. 132.

On February 5, 2024, I issued the R&R, recommending that the Honorable John G.

Koeltl grant Plaintiffs' motion for sanctions and order that Defendant's cross claims be stricken,

default judgment be entered against Defendant, and Plaintiffs be awarded their attorney's fees

and costs incurred in litigating the motion for sanctions. ECF No. 134. On July 10, 2024, Judge

Koeltl adopted the R&R in its entirety and again referred the matter to the undersigned "to

formulate an appropriate judgment consistent with" the Court's Opinion and Order granting the

motion for sanctions. ECF No. 149 at 12.

On July 24, 2024, the Court ordered briefing on the amount of attorney's fees and costs

Plaintiffs had incurred in bringing the motion for sanctions. ECF No. 150. On September 3,

2024, Plaintiffs filed their motion for attorney's fees, seeking an award of $458,357.14. ECF

Nos. 151-53. Defendant opposed the motion on October 1, 2024, disputing certain time entries

Plaintiffs' counsel submitted in support of the motion and arguing that Plaintiffs improperly sought $151,153 for time counsel spent on work unrelated to the motion for sanctions. ECF Nos. 154-55. On October 15, 2024, Plaintiffs filed a reply in further support of their motion for attorney's fees, voluntarily reducing the amount of the award sought to $436,047.57. ECF Nos. 156-57.

## LEGAL STANDARD

To calculate an award of attorney's fees, courts in this Circuit use the "lodestar method." L.J. v. N.Y.C. Dep't of Educ., No. 23-CV-07267 (ER), 2024 WL 3842083, at *3 (S.D.N.Y. Aug. 16, 2024). In other words, courts determine the "reasonable hourly rate," defined as "the rate a paying client would be willing to pay," and multiply that rate by the number of hours "reasonably expended" in prosecuting an action. See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 493 F.3d 110, 114-115, 117-18 (2d Cir. 2007), as amended, 522 F.3d 182 (2d Cir. 2008). To be reasonable, the attorney's rate must be "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Reiter v. MTA N.Y.C. Transit Auth., 457 F.3d 224, 232 (2d Cir. 2006) (internal quotation marks and citation omitted) (alteration in original).

In evaluating hours expended, the Court must make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." Haley v. Pataki, 106 F.3d 478, 484 (2d Cir. 1997) (internal quotation marks omitted) (quoting Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994)). In determining whether hours are excessive, "the critical inquiry is 'whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'" Samms v. Abrams, 198 F. Supp. 3d 311, 322 (S.D.N.Y. 2016) (quoting Grant v. Martinez, 973

F.2d 96, 99 (2d Cir. 1992)). "Hours that are excessive, redundant, or otherwise unnecessary, are to be excluded, . . . and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998) (internal quotation marks and citations omitted); accord Alicea v. City of N.Y., 272 F. Supp. 3d 603, 608-09 (S.D.N.Y. 2017).

The prevailing party bears the burden to produce "contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done." Scott v. City of N.Y., 626 F.3d 130, 133-34 (2d Cir. 2010) (citation omitted); N.Y. Ass'n for Retarded Children v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983) (holding that a plaintiff must present contemporaneous time records that indicate, "for each attorney, the date, the hours expended, and the nature of the work done" to be awarded attorney's fees and costs). District courts exercise "considerable discretion" in awarding attorney's fees. See D.B. ex rel. S.B. v. N.Y.C. Dep't of Educ., No. 18-CV-7898 (AT) (KHP), 2019 WL 6831506, at *1 (S.D.N.Y. Apr. 22, 2019) (internal quotation marks and citation omitted), adopted by, 2019 WL 4565128 (S.D.N.Y. Sept. 20, 2019); see also Hensley v. Eckerhart, 461 U.S. 424, 437 (1983); McDaniel v. Cnty. of Schenectady, 595 F.3d 411, 414 (2d Cir. 2010). When awarding attorney's fees, the court must also "clearly and concisely state reasons supporting the award." Tackie v. Keff Enters. LLC, No. 14-CV-2074 (JPO), 2014 WL 4626229, at *6 (S.D.N.Y. Sept. 16, 2014) (citation omitted).

## DISCUSSION

The Court has carefully reviewed Plaintiffs' motion, together with the supporting documentation, which includes contemporaneous time records for the attorneys for whom a fee

award is sought. ECF Nos. 151-153, 161. As set forth below, an award of $152,812.19 for attorney's fees incurred by Plaintiffs in bringing the motion for sanctions is reasonable and appropriate.

A. Hourly Rates

"In considering the reasonableness of the hourly rate, the Court's analysis is guided by the prevailing market rate for similar services in this District." Wilmington Tr., Nat'l Ass'n v. Winta Asset Mgmt. LLC, No. 20-CV-5309 (JGK) (VF), 2023 WL 9603893, at *8 (S.D.N.Y. Dec. 21, 2023), adopted by, 2024 WL 1700032 (S.D.N.Y. Apr. 18, 2024). Courts consider factors such as "attorneys' experience, reputation, and ability" when determining reasonable hourly rates. Id. (citing Arbor Hill Concerned Citizens Neighborhood Ass'n, 522 F.3d at 183-84). It is incumbent on Plaintiffs, as the moving party, to provide evidence that the rates requested are reasonable. See Walpert v. Jaffrey, No. 13-CV-5006 (PGG) (HBP), 2016 WL 11271873, at *11 (S.D.N.Y. Aug. 17, 2016) (explaining that "the party seeking fees bears the burden of establishing that the hourly rates . . . are reasonable"). A party seeking fees, for example, must provide "attorney credentials . . . in some form," such as "law school matriculation, practice area, and years of experience in the relevant practice area." Crye Precision LLC v. Bennettsville Printing, No. 15-CV-221 (FB) (RER), 2019 WL 6388636, at *8 (E.D.N.Y. Aug. 13, 2019), adopted by, 2019 WL 4463298 (E.D.N.Y. Sept. 18, 2019) (internal quotation marks and citation omitted).

Five attorneys at Proskauer Rose LLP ("Proskauer") performed work in connection with Plaintiffs' motion for sanctions: Lloyd B. Chinn, Daryl G. Leon, Jonathan R. Gartner, Sydney E. Cone, and Alexander J. Blutman. ECF No. 152 at 4. Five paralegals also worked on the matter. ECF No. 153-1 at 1-8. Plaintiffs request hourly rates ranging from $196.02 to $1,285 for each attorney, and $169.88 to $424.71 for the paralegals. ECF No. 152 at 4-5; ECF No. 153 at ¶¶ 6,

13; ECF No. 153-1 at 5. Defendant does not object to any of the requested hourly rates. See ECF No. 155.

Mr. Chinn, a partner at Proskauer, is the lead attorney on this matter. ECF No. 153 at ¶ 16. Mr. Chinn, who has been practicing law for over 30 years, is the co-head of two practice groups at Proskauer. Id. He has arbitration and trial experience in nearly fifty cases and has first-chaired 40 arbitrations and trials. Id. In this matter, Mr. Chinn determined the strategy for the litigation, communicated with Plaintiffs, edited all the briefs, and prepared for and attended the January 18, 2023 oral argument before the undersigned on the motion for sanctions. ECF No. 153 at ¶ 16; ECF No. 152 at 4; see, e.g., ECF No. 153-1 at 2, 3, 8. Although Mr. Chinn's hourly rate during the relevant time was $1,560 per hour, he has reduced his rate to $1,285 for this application. ECF No. 153 at ¶¶ 6, 13; see, e.g., ECF No. 153-1 at 1.

During the relevant time, Mr. Leon was a senior associate at Proskauer. ECF No. 152 at 4-5; ECF No. 153 at ¶ 19; ECF No. 161 at ¶ 3. Mr. Leon graduated from the University of Pennsylvania and received his J.D. from Brooklyn Law School in 2011. ECF No. 153 at ¶ 19; ECF No. 161 at ¶ 3. Mr. Leon supervised and reviewed the work of junior associates on the matter. ECF No. 152 at 4-5; see, e.g., ECF No. 153-1 at 1. During the relevant period, Mr. Leon's hourly rate began at $1,225 and was later increased to $1,345. ECF No. 153-1 at 1, 8. He requests an hourly rate of $800 in this application. Id.

With regards to Mr. Chinn and Mr. Leon, the Court in 2023 deemed their respective hourly rates to be reasonable. ECF No. 111 at 2. The hourly rate of $1,285 requested for Mr. Chinn is commensurate with the hourly rates approved by courts in this District for partners with similar experiences, reputations, and abilities. See, e.g., Vista Outdoor Inc. v. Reeves Family Tr., No. 16-CV-5766 (JSR), 2018 WL 3104631, at *6 (S.D.N.Y. May 24, 2018) (awarding $1,260 to

partners in the New York City "big firm market"); U.S. Bank Nat'l Ass'n. v. Dexia Real Estate
Cap. Markets, No. 12-CV-9412 (PAE), 2016 WL 6996176, at *8 (S.D.N.Y. Nov. 30, 2016)
("[P]artner billing rates in excess of $1,000 an hour[] are by now not uncommon in the context of
complex commercial litigation.") (internal quotation marks and citation omitted). Turning to Mr.
Leon, his $800 hourly rate is commensurate with the hourly rate awarded to other senior
associates in cases of a similar nature. See, e.g., Macquarie México Real Est. Mgmt. S.A. de
C.V. v. Hoiston Int'l Enters., Inc., No. 20-CV-8383 (JGK) (KNF), 2021 WL 4952693, at *8
(S.D.N.Y. Oct. 1, 2021), adopted by, 2021 WL 4951764 (S.D.N.Y. Oct. 25, 2021) (approving an
hourly rate of $800 per hour for a senior associate in a complex commercial case that resulted in
default judgment); An v. Despins, No. 22-CV-10062 (VEC) (JW), 2024 WL 1157281, at *4
(S.D.N.Y. Mar. 18, 2024) (finding requested hourly rates of $796 to $895 reasonable for Davis
Polk associates in awarding fees incurred in moving to dismiss and moving for sanctions).
Moreover, the hourly rates requested for Mr. Chinn and Mr. Leon were already deemed
reasonable several years ago, further demonstrating that the rates are reasonable in 2025. See
Wise v. Kelly, 620 F. Supp. 2d 435, 447 (S.D.N.Y. 2008) (noting the "obvious proposition that
billing rates continue to increase over time"); City of Almaty, Kazakhstan v. Ablyazov, No. 15-
CV-05345 (AJN) (KHP), 2020 WL 2488179, at *3 (S.D.N.Y. May 14, 2020) (finding hourly
rates reasonable based on courts' approval of similar rates two to six years earlier).

     Mr. Gartner, a senior associate at Proskauer, graduated from Cornell University and
received his J.D. from Harvard Law School in 2016. ECF No. 153 at ¶ 20; ECF No. 161 at ¶ 4;
ECF No. 152 at 5. Mr. Gartner supervised and assisted with research related to the sanctions
motion and drafted initial drafts of the motion. ECF No. 152 at 5; see, e.g., ECF No. 153-1 at 1,
5. Mr. Gartner's hourly rate during the relevant period began at $1,165, rose to $1,195, and

ultimately increased to $1,305. ECF No. 152 at 5; ECF No. 153 at ¶ 13. For this application, Plaintiffs have discounted Mr. Gartner's hourly rate to $761.21 for work performed in April 2023; $780.81 for work performed between May 2023 and June 2023; and $852.69 for work between February 2024 and March 2024. ECF No. 153-1 at 1-9. The average hourly rate for Mr. Gartner during the relevant period was $784.90.[2] Id.; ECF No. 153 at ¶ 6. The Court is not aware of another court assessing the reasonableness of Mr. Gartner's hourly rates, but Mr. Gartner's average hourly rate of $784.90 is reasonable for a senior associate at a large New York City law firm. See, e.g., Macquarie Mexico Real Est. Mgmt. S.A. de C.V., 2021 WL 4952693, at *8; An, 2024 WL 1157281, at *4.

Turning to the junior associates on this matter, the hourly rates requested for Ms. Cone and Mr. Blutman are excessive. Ms. Cone, a junior associate at Proskauer, graduated from Haverford College and received her J.D. from Tulane University Law School in 2021. ECF No. 152 at 5; ECF No. 153 at ¶ 21; ECF No. 161 at ¶ 5. Ms. Cone submitted time entries for work performed between April 11, 2023, and June 29, 2023. ECF No. 153-1 at 1-7. She was therefore a second-year associate when she conducted initial research for the sanctions motion and prepared the deposition outline for Defendant's deposition. ECF No. 152 at 5; see, e.g., ECF No. 153-1 at 1, 3. Her hourly rate during the relevant period ranged from $300.00 to $935.00. ECF

---

[2] For convenience, the Court uses the average hourly rate for Mr. Gartner of $784.90 in the lodestar calculations, see infra at 22. See Hines v. City of Albany, No. 06-CV-1517 (GTS) (RFT), 2014 WL 12613275, at *5 (N.D.N.Y. June 5, 2014) (calculating "the requested fee as the weighted average hourly rate for the hours worked during the entire period" where "Plaintiffs request[ed] varying fees . . . depending on the date of service"). The average hourly rate was calculated by taking the total amount of fees sought for Mr. Gartner's work ($76,605.92) and dividing that number by the total hours Mr. Gartner reportedly worked (97.6). See, e.g., Carroll v. Wells Fargo Clearing Servs., LLC, No. 20-CV-4918 (PKC), 2021 WL 634721, at *6 n.3 (S.D.N.Y. Feb. 17, 2021) (calculating the hourly rate charged based on "the number of hours billed and the total dollar amount for each attorney").

No. 152 at 5; ECF No. 153 at ¶ 13. For the purposes of the instant motion, her hourly rate was reduced to $196.02 to $610.93. ECF No. 153-1 at 1-9. In total, Plaintiffs seek $46,176.10 for Ms. Cone's 94.3 hours of work on the motion for sanctions, reflecting an average hourly rate of $489.67. ECF No. 153 at ¶ 6.

Mr. Blutman, also a junior associate at Proskauer, graduated from Duke University and received his J.D. from Harvard Law School in 2022. ECF No. 153 at ¶ 22; ECF No. 161 at ¶ 6. Mr. Blutman submitted time entries for work performed in January 2024. ECF No. 153-1 at 8. Mr. Blutman was therefore a second-year associate when he conducted research for Plaintiffs' reply brief in support of the sanctions motion. ECF No. 153-1 at 8; ECF No. 152 at 5. His hourly rate during the relevant period was $910 but was discounted to $594.59 for this application. ECF No. 153 at ¶ 13; 153-1 at 8; ECF No. 152 at 5. Plaintiffs do not provide any further information regarding Ms. Cone's and Mr. Blutman's respective experience as attorneys, such as whether they have previous experience working on similar matters. ECF No. 153 at ¶¶ 21-22; ECF No. 161 at ¶¶ 5-6.

Decisions from the past three years reflect "a range of reasonable hourly rates for midlevel and junior associates between $225 and $325." Z.H. v. N.Y.C. Dep't of Educ., No. 23-CV-3081 (ER), 2024 WL 3385690, at *4 (July 12, 2024); see also Sharbat v. Iovance Biotherapeutics, Inc., No. 20-CV-1391 (ER), 2024 WL 2078390, at *8 (S.D.N.Y. May 9, 2024) ("For associates with three or less years of experience, courts generally approve rates ranging from $180 and $355 per hour."); Access Bio, Inc. v. Div. 5 Labs, Inc., No. 23-CV-4820 (LGS), 2024 WL 3084990, at *3 (S.D.N.Y. June 20, 2024) ("Reasonable rates for junior attorneys involved in commercial litigation in this district are typically less than $350, even at large firms."). The hourly rates requested for Ms. Cone and Mr. Blutman are more akin to the rates

requested for midlevel or senior associates, but both were only second-year associates at the time they performed work on this case. See, e.g., Match Grp., LLC v. Beazley Underwriting Ltd., No. 22-CV-4629 (LGS) (SLC), 2023 WL 9603886, at *7 (S.D.N.Y. Dec. 21, 2023), adopted by, 2024 WL 863468 (S.D.N.Y. Feb. 29, 2024) (finding hourly rates of $500 and $450 appropriate for associates with three to five years of experience); see also HomeAway.com, Inc. v. City of New York, 523 F. Supp. 3d 573, 598 (S.D.N.Y. 2021) (finding $375 to $400 to be reasonable hourly rates for midlevel and senior associates in "accord[ance] with recent case law in this District involving senior associates at sophisticated law firms"). Given recent awards, an hourly rate of $275 for Ms. Cone and Mr. Blutman—which is in the middle of the range courts in this District have approved for junior associates—is reasonable and appropriate. See, e.g., Sharbat, 2024 WL 2078390, at *8 (explaining that reasonable rates for junior associates range from $180 to $355 and reducing junior associate's hourly rate accordingly); Match Grp., LLC, 2023 WL 9603886, at *7 (reducing hourly rate for junior attorneys to $300 in a commercial contract dispute).

Paralegals and support staff also worked on this matter on an as-needed basis. ECF No. 153 at ¶ 23. Ordinarily, Proskauer charges hourly rates for paralegals that range between $260 and $650. ECF No. 153 at ¶ 13.[3] For the instant motion, Proskauer seeks hourly rates between $169.88 and $424.71. ECF No. 153-1 at 3, 5. Courts in this District, however, ordinarily find that an hourly rate of $100 to $175 for legal assistants is reasonable. See, e.g., Rosario v. City of N.Y., No. 18-CV-04023 (LGS) (SDA), 2023 WL 2908655, at *9 (S.D.N.Y. Jan. 27, 2023), adopted as modified by, 2023 WL 2523624 (S.D.N.Y. Mar. 15, 2023) (stating that "an hourly

---

[3] Plaintiffs' counsel represents that hourly rates for paralegals range from $260 to $340. ECF No. 153 at ¶ 13. But the billing records reflect that one paralegal, Joan K. Hoffman, ordinarily billed at an hourly rate of $650 and an adjusted rate of $424.71. See ECF No. 153-1 at 5.

rate of $175 for paralegals and law clerks is reasonable"); <u>Frazier v. FCBC Cmty. Dev. Corp.</u>, No. 22-CV-5270 (AS), 2024 WL 3666372, at *8 (S.D.N.Y. Aug. 6, 2024) (holding that $125 per hour was reasonable for paralegals and "within the range typically awarded in this district"); <u>Galindo v. Yummy Foods Deli Corp.</u>, No. 21-CV-45 (JGLC) (SLC), 2024 WL 947283, at *17 (S.D.N.Y. Jan. 17, 2024), <u>adopted by</u>, 2024 WL 515245 (S.D.N.Y. Feb. 9, 2024) ("For paralegals, hourly rates of $100 to $150 are typical for awards in this District."). Consequently, the requested rates far exceed those typically awarded to paralegals in this District. Plaintiffs are entitled to an hourly rate of $150 for work performed by paralegals on this case.

B. <u>Hours Expended</u>

Plaintiffs submitted contemporaneous billing records reflecting 595.5 hours of work by attorneys and paralegals in connection with the motion for sanctions. ECF No. 153-1 at 9; ECF No. 153 at ¶ 6. Plaintiffs represent that Proskauer spent "12 attorney hours reviewing the extent of Defendant's spoliation"; "440 attorney hours and 50 paralegal hours" on the moving papers for the sanctions motion, "preparing for and taking Defendants' second deposition," and "attempt[ing] to resolve the dispute without further motion practice"; and "98 attorney hours and 6 paralegal hours on the various replies, oral argument, and responses to Defendant's objections to the motion for sanctions." ECF No. 152 at 8; <u>see also</u> ECF No. 153 at ¶ 6; ECF No. 153-1 at 1-9. Plaintiffs also note that counsel has reduced the requested hourly rates for each attorney by 25% and has excluded the following categories of fees and costs: the hours expended in moving for attorney's fees; costs associated with legal research fees; and costs related to the experts retained by Plaintiffs in connection with the motion for sanctions. ECF No. 152 at 10. Plaintiffs argue that their voluntary reduction in the hourly rates and omission of certain costs and fees from their application weigh in favor of a full fee award. <u>Id.</u> (citing <u>Marky's Martial Arts, Inc. v.</u>

FC Online Mktg., Inc., No. 19-CV-03363 (ALC) (VF), 2022 WL 18276016, at *15 (S.D.N.Y.

Sept. 16, 2022), adopted by, 2023 WL 171401 (S.D.N.Y. Jan. 12, 2023)).

Defendant argues that the billing records include dozens of time entries for unrelated

costs. ECF No. 155 at 16-20. Defendant complains of Proskauer's block-billing practices, which

resulted in time entries describing work that was both related and unrelated to the motion for

sanctions. Specifically, Defendant argues that Proskauer's billing records reflect the following

fees for work unrelated to the sanctions motion: $14,544 related to the first breach of the forensic

review protocol (id. at 17); $4,245 related to the second breach of the forensic review protocol

(id. at 18); $9,565 related to the April 26, 2023 conference with the Court (id.); $31,591 related

to the Department of Labor's investigation into Plaintiffs' termination of Defendant (id. at 19);

$26,797.50 related to counsel's communications with Defendant's employer (id.); $6,982.50

related to communications with the Financial Industry Regulatory Authority (id.); $6,455 related

to Defendant's deposition (id.); $2,992.50 related to defense counsel's withdrawal (id.);

$8,697.50 for an ex parte call to discuss the potential resolution of the case (id.); $21,299.50

related to Plaintiffs' proposed redactions to Defendant's June 1, 2023 letter to the Court (id. at

20); $12,333.50 related to communications with Defendant's former attorney (id.); and $5,650

related to Defendant's bankruptcy filing (id.). In total, Defendant contends that Plaintiffs seek

$151,153 in unrelated legal fees.[4] Id.

---

[4] As demonstrated in Plaintiffs' reply brief, Defendant overstates the amount of fees
sought for the disputed categories of work. ECF No. 156 at 2 n.2. To generate the $151,153
figure, Defendant used the standard billing rate for the attorneys on the matter. Id. Plaintiffs'
counsel, however, discounted the hourly rates for Proskauer's attorneys for this motion. See ECF
No. 152 at 4-5. Further, Defendant challenged certain time entries multiple times, resulting in an
inflated figure of fees charged for unrelated work. ECF No. 156 at 3 n.2. Therefore, after
correcting for these errors, Defendant actually contests $72,605.06 in fees requested by
Plaintiffs. ECF No. 156 at 3 n.2; ECF No. 156, Appendix at 2-3.

In response to Defendant's arguments and "in the interests of compromise," Plaintiffs reduced the requested fee award by $22,489.57.[5] ECF No. 156 at 3-4. In doing so, Plaintiffs conceded that certain block-billed time entries included in the fee application reflected hours expended on work unrelated to the motion for sanctions. See, e.g., id. at 4. In their reply brief, Plaintiffs voluntarily shaved fractions of hours and, in some instances, up to two hours, from time entries that reflect mixed work or redundant work. See, e.g., id. at 4, 5.

In crafting an award of reasonable attorney's fees, a trial court does not have to conduct a full audit of the contemporaneous billing records, as "courts need not, and indeed should not, become green-eyeshade accountants." Fox v. Vice, 563 U.S. 826, 838 (2011). Instead of "achiev[ing] auditing perfection," the "essential goal in shifting fees (to either party) is to do rough justice." Id. Thus, where an application for fees includes "[h]ours that are excessive, redundant, or otherwise unnecessary," courts have the "discretion to simply deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." Kirsch, 148 F.3d at 173 (internal quotation marks and citations omitted); see also Beastie Boys v. Monster Energy Co., 112 F. Supp. 3d 31, 57 (S.D.N.Y. 2015) (reducing hours by 30% to reflect "considerations of whether work performed was necessary, leanly staffed, or properly billed"). Courts apply a percentage reduction to the hours requested where, for example, the hours expended were excessive, the time entries reflect block billing, the entries include time spent on unrelated work, the time entries are redundant or vague, and/or the time entries reflect that work should have been delegated to more junior attorneys or paralegal staff. See, e.g., Gym Door Repairs, Inc. v. Total Gym Repairs, No. 15-CV-4244 (JGK) (OTW), 2023 WL 6519626, at

---

[5] Plaintiffs' reply brief is inconsistent with regards to the "[v]oluntary reductions accepted by StoneX." ECF No. 156 at 3. Initially, Plaintiffs represent that they are voluntarily reducing the amount sought by $22,489.57 (id. at 3, 4), but later in their reply brief, Plaintiffs represent they are reducing the amount by $22,456.57 (id. at 7, 8).

*12-16 (S.D.N.Y. Mar. 31, 2023), adopted by, 2023 WL 6390156 (S.D.N.Y. Sept. 29, 2023) (reducing hours by 35% for excessive billing and an additional 20% for vagueness, 15% for block billing, and 5% for billing for clerical or administrative tasks); Artica v. J.B. Custom Masonry & Concrete, Inc., No. 09-CV-3796 (RER), 2012 WL 13102524, at *8-9 (E.D.N.Y. June 4, 2012) (applying a 15% across-the-board reduction to hours where time entries included "hours spent exclusively on unrelated claims"); Graziano v. First Unum Life Ins. Co., No. 21-CV-2708 (PAC), 2024 WL 1175143, at *4-5 (S.D.N.Y. Mar. 19, 2024) (reducing hours because of redundant and vague time entries and "failure to delegate appropriately").

As discussed below, a 65% across-the-board reduction in the hours requested is warranted because Proskauer's hours are excessive; the billing records include block-billed entries with descriptions for work unrelated to the motion for sanctions; the time entries are in some instances redundant; the billing records include time spent by attorneys on clerical tasks; certain time entries are impermissibly vague; and the case was overstaffed.

First, Proskauer billed an excessive amount of hours for the motion for sanctions. Proskauer's attorneys expended close to 600 hours working on the motion for sanctions. See ECF No. 153-1; ECF No. 153 at ¶ 6. Although the hours actually expended are not dispositive, Foster v. Kings Park Cent. Sch. Dist., 174 F.R.D. 19, 27 (E.D.N.Y. 1997), the Second Circuit has cautioned that "attorney's fees are to be awarded with an eye to moderation, seeking to avoid either the reality or the appearance of awarding windfall fees," New York State Ass'n for Retarded Children, Inc., 711 F.2d at 1139 (2d Cir. 1983) (internal quotation marks and citations omitted). Courts in this District generally find 100 hours to be within the reasonable range for attorneys to expend on work related to a motion for sanctions. See, e.g., Novick v. AXA Network, LLC, No. 07-CV-7767 (AKH) (KNF), 2013 WL 6508498, at *1 (S.D.N.Y. Dec. 11,

2013) (holding that 115.5 hours were reasonably expended in "working on the motion for sanctions" and "preparing for and conducting" related depositions); Vaigasi v. Solow Mgmt. Corp., No. 11-CV-5088 (RMB) (HBP), 2017 WL 3868990, at *5 (S.D.N.Y. Sept. 5, 2017) (collecting cases and determining that spending 65 hours "drafting and revising the motion for sanctions" was excessive). Indeed, even as compared to other types of motions, the 595 hours expended here is far in excess of the number of hours typically deemed reasonable. See, e.g., Top Jet Enters., Ltd. v. Kulowiec, No. 21-MC-789 (RA) (KHP), 2022 WL 1184245, at *3, 5 (S.D.N.Y. Apr. 21, 2022) (finding that the 438.85 hours "spent on the motion to compel, reply brief, sur-reply and oral argument" was "patently excessive"); Nike, Inc. v. Top Brand Co., No. 00-CV-8179 (KMW) (RLE), 2006 WL 2946472, at *7-8 (S.D.N.Y. Feb. 27, 2006), adopted by, 2006 WL 2884437 (S.D.N.Y. Oct. 6, 2006) (finding 241.5 hours spent on a summary judgment motion excessive); Sea Spray Hldgs. v. Pali Fin. Grp., Inc., 277 F. Supp. 2d 323, 325 (S.D.N.Y. 2003) (reducing fees because 123.75 hours expended on a motion to dismiss was "excessive on its face"); see also HVT, Inc. v. Port Auth. of New York & New Jersey, No. 15-CV-5867 (MKB) (VMS), 2018 WL 6079932, at *6 (E.D.N.Y. Nov. 21, 2018) ("The 293.6 hours cumulatively spent on the cross-motions for summary judgment is excessive on its face given the fact that there was a very small record . . . .").

Although the total hours spent on the sanctions motion is on its face unreasonable, individual time entries also reveal instances where attorneys billed an excessive amount of time on discrete tasks related to the motion. For example, Mr. Gartner, a senior associate, expended over 70 hours researching and drafting the opening brief of the sanctions motion. ECF No. 153-1 at 1-6. The lead attorney on the matter, Mr. Chinn, spent 6.6 hours on work related to the opening brief. Id. Given their levels of experience, both attorneys should have been more

efficient and expended far less hours on their respective tasks. Further, Mr. Leon, another senior

associate, and Mr. Chinn spent a combined 15.5 hours on the nine-page reply brief in support of

the motion for sanctions (id. at 7; ECF No. 122), and Mr. Chinn and Mr. Gartner spent at least

22.6 hours on the nine-page opposition brief to Defendant's objections to the R&R (ECF No.

153-1 at 8-9; ECF No. 137). Given their seniority, the amount of time expended by Mr. Chinn,

Mr. Leon, and Mr. Gartner preparing the two nine-page responses was excessive. See Pasini v.

Godiva Chocolatier, Inc., No. 17-CV-1812 (VEC), 2018 WL 11464564, at *3 n.6 (S.D.N.Y. May

21, 2018) (finding it "inconceivable" that a reply brief "would consume 21 hours of an

experienced lawyer's time"); Underdog Trucking, L.L.C. v. Verizon Servs. Corp., 276 F.R.D.

105, 112 (S.D.N.Y. 2011) (finding it unreasonable for a partner to spend 2.1 hours reviewing a

motion to compel where a junior associate spent 20 hours on drafting the motion); MB Fin.

Bank, N.A. v. 56 Walker, LLC, No. 11-CV-5538 (JGK), 2011 WL 6338808, at *4 (S.D.N.Y.

Dec. 19, 2011) ("It should not have taken two partners and a senior associate fifty-one hours to

[work on a remand motion]."). This type of overbilling further supports an across-the-board

reduction in the hours requested. See Gym Door Repairs, Inc., 2023 WL 6519626, at *13

(applying a 35% across-the-board reduction where attorneys spent an unreasonable amount of

time on specific tasks).

Second, as pointed out by Defendant, counsel's time entries include block billing,

reflecting work performed on this matter that was not directly related to the motion for sanctions.

Mr. Leon, for example, recorded a single 4.8 hour time entry on April 13, 2023, reflecting work

related to: "[f]ollow[ing] up re [expert] documents"; "[p]repar[ing] for and [attending]

conference with client and [Mr.] Chinn re scheduling"; "[f]ollow[ing] up re same"; [p]repar[ing]

response to Shipman's counsel's demands re [experts] and follow[ing] up re same";

"[c]onference with [Mr.] Chinn re discovery demands and subpoena and prepar[ing] same"; and "[r]eview[ing] and follow[ing] up re [Defendant's employer's] email." ECF No. 153-1 at 1. On May 1, 2023, Mr. Leon recorded a 6.7 hour time entry reflecting work related to preparing a position statement to submit to the Department of Labor as well as work related to "[p]repar[ing] sanctions motion and [attending] conferences with Proskauer team re same." Id. at 2. Mr. Chinn similarly recorded time entries reflecting mixed work, both related and unrelated to the motion for sanctions. On May 23, 2023, for instance, Mr. Chinn billed 4.2 hours for "Emails re: FINRA status; prepare for day 2 of deposition and confer team re: same." Id. at 3. Further, Proskauer's billing records include at least three block-billed time entries from April 13, 2023, May 2, 2023, and February 21, 2024, that include work related to "ensur[ing]" that Defendant's current employer "did not improperly use the trade secrets [Defendant] misappropriated from Plaintiffs." ECF No. 156 at 4; see, e.g., ECF No. 153-1 at 1, 2, 8. Such time entries are not relevant to work conducted to prepare and file the motion for sanctions.

Proskauer also seeks reimbursement for at least 8 hours spent preparing a letter motion to redact Defendant's June 1, 2023 letter to the Court, which concerned Defendant's former counsel's withdrawal and included irrelevant allegations against individuals employed by Plaintiffs (ECF No. 95). See, e.g., ECF No. 153-1 at 5, 7. Although Plaintiffs contend that Defendant's letter was "part of [Defendant's] overall improper behavior in this matter," Plaintiffs ultimately concede that the time spent preparing a letter motion for redactions was "not directly relate[d] to [Defendant's] destruction of evidence."[6] ECF No. 156 at 6-7.

---

[6] As a result, Plaintiffs voluntarily reduced the total amount of fees sought by $7,518.50. ECF No. 156 at 7. But the time spent on the motion to redact is still included in the 595.5 hours of work for which Plaintiffs seek attorney's fees. ECF No. 153 at ¶ 6.

In short, Proskauer's block-billing practices further support a reduction in the hours claimed. See, e.g., Gym Door Repairs, Inc., 2023 WL 6519626, at *14 (explaining that courts in this Circuit reduce hours for block-billing practices where "there was evidence that the hours billed were independently unreasonable or that the block billing was mixing together tasks that were not all compensable") (internal quotation marks and citation omitted); Phoenix Four, Inc. v. Strategic Res. Corp., No. 05-CV-4837(HB), 2006 WL 2135798, at *2 (S.D.N.Y. Aug. 1, 2006) (reducing fees by 25% because "the firm's use of block billing makes it impossible to identify the work specifically related to the motion, and separate it from unrelated work"); see also Artica, 2012 WL 13102524, at *8-9 (applying a 15% across-the-board reduction to hours where "counsel employed block billing" and time entries included "hours spent exclusively on unrelated claims").

Third, Proskauer's billing records reflect redundant work, such as multiple paralegals performing the same tasks and attorneys conducting menial review of case filings multiple days in a row. Two paralegals, for example, performed a cite check of the motion for sanctions on June 12 and June 13, 2023. ECF No. 153-1 at 5. In addition, Ms. Cone, a junior associate, submitted three separate time entries for a total of 6.5 hours on June 20, 2023, reflecting work performed to finalize Plaintiffs' materials ahead of filing with the Court. Id. at 6. Specifically, Ms. Cone submitted a time entry for "[f]inalizing declaration to accompany Motion for Sanctions" for 1.5 hours, a separate time entry for "[p]reparing all documents for filing" for 2 hours, and a third time entry for "[f]inalizing exhibit list to accompany Motion for Sanctions filing" for 3 hours. Id. On July 6, July 7, July 10, and July 11, 2023, Mr. Leon, a senior associate, submitted three separate time entries for: "[r]eview[ing] Court Orders and follow[ing] up re next steps"; "review[ing] and follow[ing] up re Shipman filings"; "follow[ing] up re court filings and

next steps"; and "[r]eviewing and follow[ing] up re [Defendant's] filing."[7] Id. at 7. Billing for

redundant work is yet another basis for an across-the-board reduction in the hours claimed by

Plaintiffs. See, e.g., Siegel v. Bloomberg L.P., No. 13-CV-1351 (DF), 2016 WL 1211849, at *13

(S.D.N.Y. Mar. 22, 2016) (applying a 15% reduction for redundant time entries and explaining

that "courts routinely apply percentage reductions to requested attorneys' fees based on the

performance of inefficient, duplicative, or unnecessary work").

Fourth, Proskauer's billing records include time entries for time spent preparing for

Defendant's originally scheduled deposition on May 24, 2023. See, e.g., ECF No. 153-1 at 3

(including 4 hours of time spent as a result of Defendant's failure to appear for the deposition).

Proskauer, however, was already compensated for this time in a prior order that awarded

Plaintiffs fees and costs for the deposition given Defendant's failure to appear. See ECF No. 111.

Including those hours in this application would result in double billing for the same work.[8]

Fifth, Proskauer's billing records show instances where an attorney performed clerical

tasks that should have been delegated to a paralegal. Ms. Cone, for example, billed for

"[c]oordinating the delivery of filed items to [Defendant]" (ECF No. 153-1 at 7); "[o]rganizing

files of all materials filed during the week of [July 19, 2023]" (id.); and "organizing exhibits" (id.

at 2). Plaintiffs' inclusion of these time entries in the application for fees further supports a

reduction in hours claimed. See Lilly v. City of New York, 934 F.3d 222, 225 (2d Cir. 2019)

(affirming "the district court's decision to reduce the hours claimed through an across-the-board

---

[7] During the entire month of July 2023, there was only one three-page document filed on
the docket. See ECF No. 114.

[8] Plaintiffs voluntarily reduced the total amount of fees sought by $4,170.00 in response
to Defendant's argument that Plaintiffs were already awarded fees for Defendant's failure to
appear for his deposition. ECF No. 156 at 5. But the 4 hours for which Plaintiffs were already
awarded fees are still included in the billing records submitted in support of the instant motion.
ECF No. 153-1.

reduction to reflect the clerical work performed"); <u>Gym Door Repairs, Inc.</u>, 2023 WL 6519626, at *16 (reducing hours claimed an additional 5% for "mixing in clerical tasks with legal tasks," for a total reduction of 75%).

      Sixth, certain time entries in the billing records are vague. A paralegal, for instance, spent two hours on "depo prep" on May 25, 2023. ECF No. 153-1 at 4. The relevant time entry, which likely refers to Defendant's failed deposition which had been scheduled for May 24, 2023, provides no further detail as to what the paralegal did during those two hours. <u>Id.</u> Further, Proskauer's billing records include several time entries which vaguely refer to "next steps." On June 26, 2023, Mr. Leon billed for "[f]ollow up re filings and next steps" (<u>id.</u> at 7); on July 5, 2023, Mr. Chinn billed for "[e]mails with [Mr. Leon] re: next steps" (<u>id.</u>); on October 27, 2023, Mr. Leon billed for "[f]ollow up re court filings and next steps" (<u>id.</u>); and on February 15, 2024, Mr. Chinn billed for "[r]eview and respond to CH email re: next steps" (<u>id.</u> at 8). <u>See</u> <u>Fair Hous.</u> <u>Justice Ctr. v. Pelican Mgmt., Inc.</u>, No. 18-CV-1564 (ER), 2025 WL 965129, at *9 (S.D.N.Y. Mar. 31, 2025) (holding that time entries "referencing emails and calls regarding 'next steps' without additional context" are vague). Courts often reduce hours claimed in fee applications as a result of vague time entries. <u>Kerr v. John Thomas Fin.</u>, No. 14-CV-9168 (KBF) (HBP), 2017 WL 435826, at *10 (S.D.N.Y. Jan. 31, 2017), <u>adopted as modified by</u>, 2017 WL 1609224 (S.D.N.Y. May 1, 2017) ("The vagueness of these entries, in conjunction with plaintiff's block billing, warrant a further reduction in fees.").

      Finally, there is no reason that five attorneys—including one partner, two senior associates, and two junior associates—along with five paralegals were needed to litigate the motion for sanctions. At bottom, this is a case involving a pro se litigant. Further, the bulk of the research and drafting on the sanctions motion was performed by senior associates, rather than

more junior attorneys. Indeed, a partner and two senior associates account for 441.6 of the total 595.5 hours claimed by Proskauer in this application. ECF No. 153 at ¶ 6. In short, from the billing records it appears that this matter was overstaffed and could have been litigated more leanly, further justifying a reduction in the claimed hours. See Pig Newton, Inc. v. Bds. of Dirs. of Motion Picture Indus. Pension Plan, No. 13-CV-7312 (KPF), 2016 WL 796840, at *7 (S.D.N.Y. Feb. 24, 2016) (reducing hours in part due to "the 'top-heavy' nature of the legal services provided"); Top Jet Enters., Ltd., 2022 WL 1184245, at *4 (reducing hours because the matter was not leanly staffed and "[p]artners and senior attorneys were heavily involved in drafting" and "performed some research").

Accordingly, several factors weigh in favor of an across-the-board reduction in the requested hours. In similar circumstances, courts in this Circuit have applied across-the-board reductions ranging from 30% to 75%. See, e.g., Gym Door Repairs, Inc., 2023 WL 6519626, at *16 (finding a 75% reduction of hours warranted where there was excessive billing, vagueness, block billing, and clerical tasks); Top Jet Enters., Ltd., 2022 WL 1184245, at *6 (reducing hours by 75% where counsel claimed nearly 450 hours spent on a motion to compel); Days Inn Worldwide, Inc. v. Amar Hotels, Inc., No. 05-CV-10100 (KMW) (KNF), 2008 WL 2485407, at *9-10 (S.D.N.Y. June 18, 2008) (reducing fees 75% due to redundant and vague entries and excessive hours); Griffen Sec., LLC v. Citadel Car Alarms, LLC, No. 19-CV-3494 (VSB) (GWG), 2020 WL 3264173, at *6 (S.D.N.Y. June 17, 2020), adopted by, 2020 WL 3791869 (S.D.N.Y. July 6, 2020) (reducing hours "by 65% to reach a reasonable number of hours"); LaBarbera v. J.E.T. Res., Inc., 396 F. Supp. 2d 346, 353 (E.D.N.Y. 2005) (deeming a 50% reduction "of the hours claimed" warranted where hours were unreasonably expended); Field v. Metro. Transp. Auth., No. 20-CV-928 (RA), 2021 WL 22817, at *3-4 (S.D.N.Y. Jan. 4, 2021)

(finding "that a 30% reduction of . . . proposed hours [was] proper" because the moving party did not offer a justification for the excessive hours billed). Given the issues with the billing records identified herein, a 65% reduction of the hours claimed is appropriate. Plaintiffs are thus entitled to an award of reasonable attorney's fees in the amount of $152,812.19, as indicated in the table below.

|  | Hours Claimed | Reduced Hours | Requested Rate | Modified Rate | Total[9] |
|---|---|---|---|---|---|
| Lloyd Chinn | 101.5 | 35.525 | $1,285 | $1,285 | $45,649.63 |
| Daryl Leon | 242.5 | 84.875 | $800 | $800 | $67,900 |
| Jonathan Gartner | 97.6 | 34.16 | $761.21-$852.69 | $784.90 | $26,812.18 |
| Sydney Cone | 94.3 | 33.005 | $196.02-$610.93 | $275 | $9,076.38 |
| Alexander Blutman | 5.6 | 1.96 | $594.59 | $275 | $539 |
| Paralegals and Support Staff | 54 | 18.9 | $169.88-$424.71 | $150 | $2,835 |
| Total Hours: | 208.425 |  | | Total Fees: | $152,812.19 |

---

[9] The total fees for each attorney are rounded to the nearest cent.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' motion for attorney's fees is granted in the amount

of $152,812.19. The Clerk of Court is respectfully directed to terminate the motion at ECF No.

151.

DATED:        New York, New York
              April 25, 2025

_____
VALERIE FIGUEREDO
United States Magistrate Judge